**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-cv-00690-PPS-MGG |
| v. | ) | |
| | ) | |
| UNIVERSITY OF NOTRE DAME, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF NOTRE DAME'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

PLAINTIFF'S ALLEGATIONS .......................................................................................... 2

ARGUMENT ....................................................................................................................... 5

   I.   Federal Rule of Civil Procedure 12(b)(6). ................................................................. 5

   II.   Plaintiff Fails to State a Claim for Violation of Title IX. ......................................... 6

     A.   Principles Applicable to Title IX Claims. ............................................................. 6

     B.   Plaintiff's Title IX Claim is Implausible and Fails as a Matter of Law. .......................... 7

   III.   Plaintiff Has Failed to State a Claim for Breach of Contract. ........................................ 13

     A.   Plaintiff Fails to Allege a "Contract" Between Herself and Notre Dame. ..................... 14

     B.   Plaintiff Does Not Identify a Contract, Policy, or Procedure that Notre Dame Breached ........................................................................................................ 14

     C.   Plaintiff Has Failed to Allege a Breach by Notre Dame. ............................................. 15

     D.   Plaintiff Has Failed to Allege Damages Caused by Notre Dame. ................................ 17

   IV.   Plaintiff Has Failed to State a Claim for Negligence or Invasion of Privacy. ............... 18

     A.   Plaintiff Has Not Pled the Elements of a Negligence Claim ....................................... 18

     B.   Plaintiff's Negligence Claim Improperly Repackages the Breach of Contract Claim ... 20

     C.   Plaintiff's "Invasion of Privacy" Claim Must Similarly Be Dismissed. ...................... 22

CONCLUSION ................................................................................................................... 23

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ................................................................... 5

*Adusumilli v. Ill. Inst. of Tech.*,
  No. 98-3561, 1999 WL 528169 (7th Cir. July 21, 1999) ....................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662, 681 (2009) ......................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 5, 10, 13

*Belle City Amusements, Inc. v. Doorway Promotions, Inc.*,
  936 N.E.2d 243 (Ind. Ct. App. 2010) .................................................. 17

*Bissessur v. Ind. Univ. Bd. of Trs.*,
  581 F.3d 599 (7th Cir. 2009) ................................................................ 16

*Bissessur v. Ind. Univ. Bd. of Trs.*,
  No. 1:07-CV-1290-SEB-WTL, 2008 WL 4274451 (S.D. Ind. Sept. 10, 2008) ...................... 15

*Brown v. Wabash Nat'l Corp.*,
  293 F. Supp. 2d 903 (N.D. Ind. 2003) ................................................. 22

*Burwell v. Pekin Cmty. High Sch. Dist. 303*,
  213 F. Supp. 2d 917 (C.D. Ill. 2002) ..................................................... 6

*C.S. v. Couch*,
  843 F. Supp. 2d 894 (N.D. Ind. 2011) .......................................... 7, 9, 10

*Campbell v. Bd. of Trs., of Wabash Coll.*,
  495 N.E.2d 227 (Ind. Ct. App. 1986) .................................................. 19

*Chivers v. Cent. Noble Cmty. Schs.*,
  423 F. Supp. 2d 835 (N.D. Ind. 2006) ........................................... passim

*Ciccone v. Pitassi*,
  No. Civ. A. PB 97-4180, 2004 WL 2075120 (R.I. Super. Aug. 13, 2004) ........................... 22

*Cullison v. Medly*,
  570 N.E.2d 27 (Ind. 1991) .............................................................. 22, 23

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999) .................................................................. 6, 7, 11

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
  373 F. Supp. 2d 829 (S.D. Ind. 2005) .................................................. 18

*DirecTV, LLC v. Spina*,
  No. 1:15-CV-00104-JMS, 2015 WL 5098288 (S.D. Ind. Aug. 27, 2015) ........................... 13

*Doe v. Blackburn Coll.*,
  No. 06-3205, 2012 WL 640046 (C.D. Ill. Feb. 27, 2012) ....................... 9

*Doe v. Brown Univ.*,
  166 F. Supp. 3d 177 (D.R.I. 2016) ....................................................... 21

*Doe v. Case W. Reserve Univ.,*
   Case No. 1:17 CV 414, 2017 WL 3840418 (N.D. Ohio Sept. 1, 2017)    21
*Doe v. Case W. Reserve Univ.,*
   No. 1:14CV2044, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015)........................................ 13
*Doe v. Galster,*
   768 F.3d 611 (7th Cir. 2014)........................................................................................ 6
*Doe v. Methodist Hosp.,*
   690 N.E.3d 681 (Ind. 1997).......................................................................................... 22
*Doe v. Univ. of Colo., Civil Acton,*
   No. 16-cv-1789-WJM-KLM, 2017 WL 2311209 (D. Colo. May 26, 2017) ............................ 12
*Doe v. W. New England Univ.,*
   228 F. Supp. 3d 154 (D. Mass. 2017) ........................................................................... 12
*Esonwune v. Regents Univ. of Cal.,*
   Case No. 17-cv-01102-LB, 2017 WL 2630113 (N.D. Cal. June 19, 2017)............................ 12
*Firth v. Yahoo!,*
   No. 3:10CV75-PPS/CAN, 2010 WL 2696286 (N.D. Ind. July 2, 2010) ................................ 15
*Frazier v. Fairhaven Sch. Comm.,*
   276 F.3d 52 (1st Cir. 2002) ........................................................................................ 12
*Fritzinger v. Angie's List,*
   No. 1:12-cv-01118-JMS-DML, 2013 WL 772864 (S.D. Ind. Feb. 28, 2013) ................. 20, 21
*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002) .................................................................................................. 20
*Gonzales v. Kil Nam Chun,*
   465 N.E.2d 727 (Ind. Ct. App. 1984)............................................................................ 14
*Gordon v. Purdue Univ.,*
   862 N.E.2d 1244 (Ind. Ct. App. 2007).......................................................................... 16
*Hendrichsen v. Ball State Univ.,*
   107 F. App'x 680 (7th Cir. 2004) .................................................................................. 9
*Hooks SuperX, Inc. v. McLaughlin,*
   642 N.E.2d 514 (Ind. 1994)......................................................................................... 19
*King v. DePauw Univ., Cause,*
   No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014)............................ 12
*Klobuchar v. Purdue Univ.,*
   553 N.E.2d 169 (Ind. Ct. App. 1990)............................................................................ 19
*Liu v. Nw. Univ.,*
   78 F. Supp. 3d 839 (N.D. Ill. 2015) .............................................................................. 16
*Marshall v. Ohio Univ.,*
   No. 2:15-CV-775, 2015 WL 1179955 (S.D. Ohio Mar. 13, 2015) ........................................ 8
*Neel v. Ind. Univ. Bd. of Trs.,*
   435 N.E.2d 607 (Ind. Ct. App. 1982)............................................................................ 16
*Perfect Flowers, Inc. v. Teleflora LLC,*
   No. 1:10-CV-1031-SEB-TAB, 2012 WL 2994636 (S.D. Ind. July 20, 2012)........................ 15

*Prasad v. Cornell Univ.*,
   No. 5:15-cv-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) .......................................... 15
*Ross v. Creighton Univ.*,
   957 F.2d 410 (7th Cir. 1992).................................................................................................. 15
*Shepard v. State Auto. Mut. Ins. Co.*,
   463 F.3d 742 (7th Cir. 2006).................................................................................................. 17
*St. John v. Town of Elletsville*,
   46 F. Supp. 2d 834 (S.D. Ind. 1999) ..................................................................................... 23
*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010).................................................................................................... 5
*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*,
   684 N.E.2d 1261 (Ohio Ct. App. 1996) ................................................................................ 22
*Tubbs v. Stony Brook Univ.*,
   15 Civ. 0517, 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016)..................................................... 8
*Turner v. Bd. of Aviation Comm'rs*,
   743 N.E.2d 1153 (Ind. Ct. App. 2001).................................................................................. 16
*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
   992 N.E.2d 859 (Ind. Ct. App. 2013) .............................................................................. 22, 23
*Yoona Ha v. Nw. Univ.*,
   No. 14 C 895, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) ................................................ 11
*Yost v. Wabash Coll.*,
   3 N.E.3d 509 (Ind. 2014)....................................................................................................... 19

## Statutory Authorities

20 U.S.C. § 1681(a) ..................................................................................................................... 6
Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g ............... 20
Title IX, 20 U.S.C. § 1681 ....................................................................................................... 4, 5

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 5, 10, 23

## Additional Authorities

U.S. Dept. of Education, *Office for Civil Rights, Questions and Answers on Title IX and
   Sexual Violence*, available at *https://www2.ed.gov/about/offices/list/ocr/docs/qa-
   201404-title-ix.pdf* ............................................................................................................... 20

## <u>MEMORANDUM AND POINTS OF AUTHORITIES</u>

Defendant University of Notre Dame ("Notre Dame" or the "University") respectfully submits its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## <u>INTRODUCTION</u>

Plaintiff Jane Doe's ("Plaintiff" or "Doe") Complaint is grounded in two conflicting propositions.  On the one hand, Doe claims that Notre Dame violated Title IX by investigating, against her wishes, the sexual assault of her that a concerned friend reported on Doe's behalf.  On the other hand, she claims that Notre Dame, hampered by Doe's adamant unwillingness to cooperate with the investigation, also violated Title IX by eventually closing its investigation – a decision to which Doe gave her consent.  From these conflicting propositions, Doe manufactures her Title IX claim against the University.  She claims that the University ignored her privacy rights, provided her with disparate levels of support, and then deliberately treated her less favorably than her male, white attacker.  As is discussed more fully below, her allegations against the University are patently unsupported by the facts, and her claims are unsupported by the law.  Indeed, the facts will show that the University followed its well-established Title IX procedures thoughtfully and carefully, and Plaintiff's claims that the University was deliberately indifferent to her are without merit.  Even construing Plaintiff's allegations in the light most favorable to her the allegations in the Complaint demonstrate that Notre Dame took timely, thoughtful, and appropriate action to investigate and address a sexual assault that occurred on its campus.  This does not give rise to a Title IX violation, nor does it support an award of damages for breach of contract, negligence or any other cognizable tort.  Notre Dame therefore respectfully requests that this Court grant Notre Dame's Motion to Dismiss the Complaint with prejudice.

1

## PLAINTIFF'S ALLEGATIONS[1]

Plaintiff alleges that in January 2016, during her first year as a student at Holy Cross College and a participant in the "Notre Dame Gateway Program,"[2] she was sexually assaulted by a Notre Dame student athlete, referred to in the Complaint as "Jack Roe." (Compl. ¶¶ 8, 9.) Doe did not report the incident but instead "decided to deal with her sexual assault act privately." (*Id.* ¶ 17, 18, 27.)

Three months later, in April 2016, Doe decided to share the story of her "troubling incident" involving Jack Roe with a female Notre Dame student who was discussing a second alleged victim of Roe. (*Id.* ¶¶ 10, 18.) The female Notre Dame student subsequently relayed information about Doe's sexual assault allegations to an Assistant Rector, who in turn notified Notre Dame's Title IX office. (*Id.*)

In late-April 2016, a staff member from Notre Dame's Title IX office contacted Doe and arranged a meeting with her to explain Notre Dame's Title IX process. (*Id.* ¶¶ 10, 18-19.) At that meeting, Doe "made it clear" to Notre Dame's Title IX staff that she did not want to make a report or participate in any investigation of her sexual assault. (*Id.* ¶ 19.) She also told the Title IX staff that she did not want to disclose the name or residence of the perpetrator or reveal her identity to the perpetrator. (*Id.*) It is not unusual for victims of sexual assault to decline to cooperate.

On May 6, 2016, the staff member from Notre Dame's Title IX office contacted Doe to let her know that the Title IX office had learned the identity of her assailant and would be initiating

---

[1] For purposes of this motion only, the non-conclusory factual allegations in the Complaint are assumed to be true. Furthermore, in reciting the allegations pleaded by Plaintiff, Notre Dame reserves its rights, defenses, and objections to their accuracy and truthfulness.

[2] As alleged in the Complaint, the Gateway Program allows certain students of Holy Cross College to take courses at Notre Dame during their freshman year and to transfer admission to Notre Dame upon successful completion of the one-year program. (*Id.* ¶¶ 5, 29.)

an investigation. (*Id.* ¶ 20.) The staff member also advised Doe that Notre Dame's Title IX office would be obtaining a "no-contact order" between Doe and Jack Roe. (*Id.*) Doe responded by disclosing the January sexual assault to her father and asking him to intervene. (*Id.* ¶¶ 11, 21.) Doe's father reached out to administrators at Notre Dame seeking to halt or delay any investigation of Doe's sexual assault until allegations concerning Jack Roe and the alleged second victim were investigated. (*Id.* ¶¶ 11, 21, 22.) When an educational institution, like Notre Dame, learns of possible sex-based violence, it must take immediate and appropriate steps to investigate or otherwise determine whether the assault poses a threat to the safety of its students, including the student-victim. Given the serious nature of the alleged conduct here, it is not unusual that Notre Dame began an investigation into Jack Roe's assault of Jane Doe even without her consent.

On May 16, 2016, Notre Dame's Title IX office opened an investigation into Doe's alleged sexual assault by Roe, explaining to Doe and her father that the University was not required to obtain Doe's consent to conduct an investigation of the sexual assault against her and to advise Roe of the allegations against him. (*Id.* ¶ 23.) Notre Dame's Title IX sexual assault investigation proceeded without Doe's cooperation or participation. (*Id.* ¶ 1, 10, 11, 19, 24.)

In June 2016, Doe contacted her Title IX resource coordinator to discuss campus housing for the following school year, when she would become a Notre Dame student, and her anxiety about encountering Roe on the Notre Dame campus. (*Id.* ¶¶ 12, 26.) At that time, the resource coordinator explained to Doe that the ongoing investigation of her case, which Doe was not cooperating with, was delaying Roe's ability to transfer out of Notre Dame to another school. (*Id.*) Doe agreed to close the case, which she had not opened and had opposed throughout, and Roe transferred out of Notre Dame. (*Id.*)

In the Fall Semester of 2016, after Roe's transfer out of Notre Dame, Doe enrolled as a full-time Notre Dame student and completed the semester in good academic standing. (*Id.* ¶ 12.) She again enrolled in Notre Dame for the Spring Semester of 2017 but withdrew after one month due to deteriorating physical and mental health. (*Id.* ¶ 12.) Doe claims to have suffered various damages as a result of Notre Dame's conduct in handling her sexual assault case, including loss of tuition, physical and psychological injuries, and "devaluing her Notre Dame experience." (*Id.* ¶ 34, 38, 56.)

Plaintiff's Complaint contains three separate counts:

***First,*** under Count I, Plaintiff Doe alleges that Notre Dame violated Title IX, 20 U.S.C. § 1681, *et seq.* and discriminated against her on the basis of sex by implementing its Policy on Sexual and Discriminatory Harassment in a manner favorable to "white, male student athletes" and deliberately treating Doe, a female, less favorably than her male attacker, Roe. (*Id.* ¶¶ 41-45.)

***Second,*** Plaintiff alleges a claim for breach of contract under Count II based on Notre Dame's alleged failure to comply with its own policies and procedures in handling Doe's sexual assault case, and an alleged violation of the covenant of good faith and fair dealing by allegedly acting arbitrarily, capriciously, and in bad faith during the investigation of Doe's sexual assault case. (*Id.* ¶¶ 46-49.) Plaintiff's Complaint does not specify the contractual obligations or policies and procedures that Notre Dame allegedly breached. (*Id.* ¶¶ 46-50.)

***Third,*** and finally, Doe asserts a state-common-law claim for negligence and "invasion of privacy" under Count III for allegedly breaching a duty to protect Doe's privacy and protect her from foreseeable harm during the investigation of her sexual assault case. (*Id.* ¶¶ 51-55.) In support of this claim, Doe specifically alleges, "by participating in the investigatory process in question, [Doe] reasonably relied upon the University's duty to protect her from harm," (*id.* ¶ 54),

even though Doe repeatedly acknowledges throughout the Complaint that she did not participate in the investigatory process, which she alleges was commenced and took place against her will. (*Id.* ¶¶ 1, 10, 19, 37, 54.)

<u>**ARGUMENT**</u>

### I.    Federal Rule of Civil Procedure 12(b)(6).

In deciding Notre Dame's Rule 12(b)(6) motion, the Court must accept well-pleaded facts, but should ignore "bald allegations" or "legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Dismissal is required unless a plaintiff's well-pleaded facts support "a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  To survive a motion to dismiss, "a plaintiff must do better than put[] a few words on paper that, in the hands of the imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

"A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Adams*, 742 F.3d at 729 ("By emphasizing a plausibility requirement, *Twombly* and *Iqbal* obviously require more than mere notice.").  Finally, pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Under these clear guidelines, Plaintiff's claims should be dismissed.

## II.    Plaintiff Fails to State a Claim for Violation of Title IX.

Count I of the Complaint should be dismissed because it fails to articulate a plausible violation of Title IX. Plaintiff's allegations are internally inconsistent, factually unsupported, and contrary to prevailing law. Even taking all the allegations in the Complaint as true, Plaintiff cannot, as a matter of law, state a legally sufficient claim that would entitle her to relief under Title IX.

### A. *Principles Applicable to Title IX Claims.*

Title IX of the Educational Amendments of 1972 prohibits sex discrimination in educational programs or activities supported by federal grants. *Chivers v. Cent. Noble Cmty. Schs.*, 423 F. Supp. 2d 835, 846 (N.D. Ind. 2006) (citing 20 U.S.C. § 1681(a)). In cases of student-on-student harassment, the Supreme Court has determined that private damages actions against a school are *only* available "where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (emphasis added). Therefore, "[a] sexual harassment claim brought under Title IX cannot succeed *unless the defendant was deliberately indifferent in the face of acts of harassment of which it had knowledge*[.]" *Adusumilli v. Ill. Inst. of Tech.*, No. 98-3561, 1999 WL 528169, at *1 (7th Cir. July 21, 1999) (emphasis added).

Deliberate indifference is "[a] response that is 'clearly unreasonable in light of the known circumstances.'" *Burwell v. Pekin Cmty. High Sch. Dist. 303,* 213 F. Supp. 2d 917, 930 (C.D. Ill. 2002) (quoting *Davis,* 526 U.S. at 648-49). The Seventh Circuit has explained that the deliberate indifference standard "sets a high bar for plaintiffs under . . . Title IX." *Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014). And this Court has observed that "[a]s long as the school's response is

6

not 'clearly unreasonable,' it cannot have acted with the requisite deliberate indifference to incur Title IX liability." *Chivers*, 423 F. Supp. 2d at 847 (citing *Davis,* 526 U.S. at 648-49).

Moreover, school officials are entitled to deference when making disciplinary decisions, and liability will not lie unless the court could conclude that their response to the alleged sexual harassment was clearly unreasonable. *See C.S. v. Couch*, 843 F. Supp. 2d 894, 910–11 (N.D. Ind. 2011) ("[C]ourts are to refrain from second-guessing school administrators' disciplinary decisions, and school administrators are to continue to have the flexibility they require in such decisions.").[3] This Court has followed the Supreme Court's lead in *Davis* and observed that courts are generally "skeptical of arguments premised on the degree to which a school punishes its students." *Id*. at 910 (internal citations omitted).  Importantly, this Court also observed that when a school takesaction to prevent future harassment, the school's response is not "clearly unreasonable." *Id*. at 910-11 (collecting cases).

B.  *Plaintiff's Title IX Claim is Implausible and Fails as a Matter of Law.*

Plaintiff's claim under Title IX rests on internally inconsistent allegations which, even if taken as true, fail to state a claim upon which relief may be granted.  Specifically, for at least three, independent reasons, Plaintiff's Title IX claim should be dismissed.

***First***, Plaintiff alleges Notre Dame is liable under Title IX for deliberate indifference because it immediately began investigating allegations that she had been raped by a Notre Dame student.  On its face, this claim is implausible and, more importantly, it does not and cannot demonstrate that Notre Dame's response was "clearly unreasonable."

---

[3] While *Couch* was a Title VI case, the Court noted that "Title IX of the Civil Rights Act is modeled after Title VI such that the two statutes operate in the same manner, and 'a decision with respect to one statute applies to the other statute.'" 843 F. Supp. 2d at 905 n.14 (internal citations omitted).

Plaintiff admits that shortly after she described her attack to a classmate, it was subsequently relayed to an Assistant Rector who, in turn, reported it to Notre Dame's Title IX office. (Compl. ¶ 18.) Shortly thereafter, Doe received an April 21, 2016 email to speak with a staff member in the Title IX office. (*Id*.) Plaintiff admits that the staff member explained the Title IX process to her at that time. (*Id*. ¶ 19.) Despite Plaintiff's admitted refusal to cooperate in the investigation (*id*.), the Title IX staff member conducted her own follow-up and, on May 6, 2016, successfully identified Plaintiff's assailant and began an official investigation into her sexual assault. (*Id*. ¶ 20.) Plaintiff also admits that the Title IX office put a "no-contact order" in place between Plaintiff and her assailant. (*Id*.)

As a matter of law, this is insufficient to support a deliberate indifference claim. Deliberate indifference Title IX cases are typically brought when a university has **ignored** a victim's report of sexual assault, and has no application in a case like this where prompt action was actually taken. In *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955 (S.D. Ohio Mar. 13, 2015), for example, the court observed that it was unclear how a claim of deliberate indifference under Title IX could ever apply in a case where the university indisputably took actions to "*protect* the alleged victim *from* [the perpetrator]." *Id*. at *8 ("OU became aware of the situation, and – so as *not* to be deliberately indifferent to student harassment – initiated an investigation of the matter.") (emphasis in original).

The same is true here. What few facts Plaintiff does allege demonstrate that Notre Dame was anything but deliberately indifferent and that its actions were not clearly unreasonable. Upon being notified of a sexual assault by a Notre Dame student, Notre Dame moved swiftly to investigate it and to ensure the safety of its students, in accord with its Title IX obligations. *See Tubbs v. Stony Brook Univ.*, 15 Civ. 0517 (NSR), 2016 WL 8650463, at *7 n.6 (S.D.N.Y. Mar. 4,

2016) ("[T]he university has an independent obligation to investigate allegations of sexual misconduct. . . . The duty to conduct a Title IX investigation is 'a university's responsibility, regardless of whether a student has complained, asked the university to take action, or identified the harassment as a form of discrimination.'") (citing official guidance letter from the U.S. Department of Education Office for Civil Rights to SUNY system).    Indeed, by *not* investigating the report of an on-campus rape by one of its students – exactly what Plaintiff claims she wanted – Notre Dame would risk exposing itself to Title IX liability.

Furthermore, the Complaint fails to demonstrate why or how this prompt action on the part of Notre Dame to investigate a sexual assault was "clearly unreasonable." *See e.g., Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 685 (7th Cir. 2004) (holding that while plaintiff may have wanted the university to do more, she failed to "explain why what the university *did* do – promptly investigating the situation as soon as she told them about it, issuing [the perpetrator] a no-trespass letter, and warning him not to contact or retaliate against [the complainant] – could be considered 'clearly unreasonable' in light of the known circumstances."); *Chivers*, 423 F. Supp. 2d at 850 ("The Court does not suggest that reasonable persons could not differ as to how the matter should have been handled or that the School's response was ideal. . . . Although the School could have arguably done more, the Defendants' actions were not clearly unreasonable in light of the known facts."); *Doe v. Blackburn Coll.*, No. 06-3205, 2012 WL 640046, at *13 (C.D. Ill. Feb. 27, 2012) (action not clearly unreasonable where university took action to investigate and to provide resources and education to victim and other students).    And as this Court has held, when a school takes action to prevent future harassment, as Plaintiff admits Notre Dame did here, the school's response cannot be "clearly unreasonable." *Couch*, 843 F. Supp. 2d at 910–11.    For that reason alone, her Title IX claim fails.

**Second**, at the same time Plaintiff insists she never wanted Notre Dame to investigate her sexual assault, Plaintiff alleges Notre Dame is liable for deliberate indifference because it failed to take appropriate disciplinary action against the perpetrator, allegedly allowing him to transfer to another school instead. Specifically, Plaintiff alleges that "employees of Notre Dame used rather questionable maneuvers to assist Jack's transfer to a Power Five school where he has been able to avoid further disciplinary action and is continuing to pursue his football career. *This conduct by Notre Dame shows its deliberate indifference to the rights of female students*." (Compl. ¶ 15.) (emphasis added). In other words, Plaintiff asserts Notre Dame is liable because it did not sufficiently punish Roe for an assault that Plaintiff did not want investigated in the first place and which she voluntarily agreed to close. (*Id*. ¶ 12.)

This does not state a claim for deliberate indifference under Title IX. As an initial matter, Plaintiff admits that she "made it clear she did not want to make a report," that she "did not want to participate in an investigation," and "did not want to disclose the perpetrator's name or residence." (*Id*. ¶ 19.) She also admits that she agreed to close the investigation. Yet, even as she admits her uncooperativeness, she simultaneously chastises Notre Dame for failing to render any discipline and, without any factual support, posits that the lack of discipline **must** be the result of Notre Dame's desire to "protect its 'golden brand.'" (*Id*. ¶ 14.) This is exactly the type of implausible, factually unsupported claim that the Supreme Court held should be dismissed on a Fed. R. Civ. P. 12(b)(6) motion. *See Twombly*, 550 U.S. at 555.

Perhaps more importantly, Plaintiff's allegations fail for another, independent reason. School officials must be given the flexibility to make disciplinary decisions without second-guessing by the courts. *See Couch*, 843 F. Supp. 2d at 910–11. Plaintiff's claim for damages is not only implausible; it flies in the face of this well-established principle. Plaintiff states that her

"paramount concern" after Notre Dame initiated the investigation into her assault "was facing her attacker on campus," yet she complains of the "no-contact" order initiated by the University. (*See* Compl. ¶ 12.)  She also alleges that she was damaged when her attacker transferred to another school, (*id*. ¶ 27), but in the next paragraph, Plaintiff alleges that "rather than take appropriate actions to remove the perpetrator from Notre Dame, employees of the university arranged for Jane's case to be closed," which allowed Roe to transfer away from Notre Dame. (*Id.* ¶ 28.)

In other words, it was not enough that the perpetrator transferred away from Notre Dame's campus – and, critically, far away from Plaintiff, thereby relieving her of her "paramount concern." (*Id.* ¶ 12.)  Rather, Plaintiff's claim for damages flows from Notre Dame's alleged decision to "help[] her attacker move along to another school" without disciplining him first.  (*Id.* ¶ 37.)  As the Supreme Court in *Davis* held, however, "Title IX does not give the victim the right to make particular remedial demands."  *Yoona Ha v. Nw. Univ.*, No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (citing *Davis,* 526 U.S. at 648-49); *see also Chivers*, 423 F. Supp. 2d at 850 ("By arguing that the discipline was not swift (or severe) enough, the Plaintiff is essentially asking this court to 'second guess' the School's decisions.  That is not the Court's role.").  The correct standard to be applied, as explained above, is whether the school's actions are "clearly unreasonable."  The face of the Complaint demonstrates that Notre Dame took immediate action, and its response to the third-party report that Plaintiff was the victim of an on-campus sexual assault cannot be found "clearly unreasonable."

***Third***, without any factual support, Plaintiff makes a threadbare allegation that gender was a motivating factor in Notre Dame's actions.  At the same time, the Complaint makes an unsupported claim that Notre Dame's alleged misconduct was motivated by a desire to protect its reputation and by a preference for student-athletes over non-athlete students, not male over female

students. (*See, e.g.,* Compl. ¶ 26 ("Of course, this made perfect sense if Notre Dame was interested in opening up a football scholarship for another football player") and ¶ 12 ("This approach served to protect Notre Dame's reputation (and opened up an additional football scholarship)[.]").) At most, therefore, Plaintiff's Complaint alleges that Notre Dame discriminated based upon a student's athlete/non-athlete status, not sex. That is insufficient as a matter of law to state a claim for a violation of Title IX. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002) ("Discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal.").[4] For this additional reason, Plaintiff has failed to state a claim upon which relief may be granted, and her Title IX claim should be dismissed.

Plaintiff also alleges that "[t]he University's Policy on Sexual Discriminatory Harassment as conceived and implemented by the University was deliberately designed to favor the University and white, male student athletes," (Compl. ¶ 42) and that "[t]he University also provided disparate levels of support to Jane during the investigation proceedings." (*Id.* ¶ 43). While not clear from the Complaint itself, these allegations appear to rest on a poorly articulated theory that Notre Dame selectively enforces its sexual harassment policies. To the extent Plaintiff's claim is that Notre Dame selectively enforces its policies on the basis of sex, Plaintiff's claim fails because she has

---

[4] Cases holding that proof of discrimination based on sex is required to state a claim under Title IX are legion. *See, e.g., Esonwune v. Regents Univ. of Cal.*, Case No. 17-cv-01102-LB, 2017 WL 2630113, at *3 (N.D. Cal. June 19, 2017) (dismissing Title IX claim holding that plaintiff's allegation of discrimination was conclusory and did not "show how she was treated differently than similarly situated students"); *Doe v. Univ. of Colo.*, Civil Acton No. 16-cv-1789-WJM-KLM, 2017 WL 2311209, at *10 (D. Colo. May 26, 2017) (granting motion to dismiss Title IX claim and stating, "[t]he Court disagrees with cases that continue to accept conclusory allegations of gender bias"); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 159 (D. Mass. 2017) (affirming magistrate judge's recommendation that plaintiff's Title IX claim be dismissed and stating "a claim may be offered pursuant to Title IX only where non-speculative evidence exists of discrimination based on sex"); *King v. DePauw Univ.*, Cause No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507, at *11 (S.D. Ind. Aug. 22, 2014) (denying preliminary injunction as to plaintiff's Title IX claim stating that plaintiff had "not pointed to anything that persuades the Court that [plaintiff's] gender was a motivating factor in any of [university's] actions").

not pled a single fact to support such a theory. She makes no effort to show that other similarly-situated male students (or male student-athletes) are "favored" in Title IX investigations, or that similarly-situated female students are somehow "disfavored." *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) ("a plaintiff demonstrates selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges."). Moreover, Plaintiff cannot support her Title IX claim by relying on a comparison of perceived differences in the treatment of Plaintiff and Jack Roe during the Title IX process. *Id.* (noting that plaintiff could not sustain a Title IX selective enforcement claim by comparing school's treatment of complainant and respondent). Rather than allege facts to support her allegations, Plaintiff instead employs "buzzwords" in a kitchen-sink approach to her Title IX claim. Plaintiff's bare allegations are insufficient under *Twombly* to allow the Court to plausibly infer that Notre Dame's polices are either designed or implemented in a gender discriminatory manner. Federal pleading standards require much more, and her Complaint should therefore be dismissed.

### III. Plaintiff Has Failed to State a Claim for Breach of Contract.

On its face, Plaintiff's Complaint fails to allege even most basic elements required to sustain a claim for breach of contract. Under Indiana law, a plaintiff "must establish three elements to recover under a breach of contract claim: (1) the existence of a contract; (2) a breach of that contract by the [defendant]; and (3) damages suffered by the [plaintiff] as a result of the [defendant's] breach." *DirecTV, LLC v. Spina,* No. 1:15-CV-00104-JMS, 2015 WL 5098288, at *2 (S.D. Ind. Aug. 27, 2015). Plaintiff has not sufficiently pled any of these elements to establish breach of contract as a matter of law, nor has Plaintiff alleged facts to establish a breach of the implied covenant of good faith and fair dealing.

    A.   *Plaintiff Fails to Allege a "Contract" Between Herself and Notre Dame.*

As a foundational matter, Plaintiff has insufficiently pled that she is in contractual privity with Notre Dame.  *See Gonzales v. Kil Nam Chun,* 465 N.E.2d 727, 729 (Ind. Ct. App. 1984) (holding that generally, only parties to a contract or those in privity with the parties have rights under the contract).  Plaintiff alleges, for example, that "[a]t all times relevant hereto, a contractual relationship existed between the University and Jane as a tuition paying student."  (Compl. ¶ 46.) But this general, unspecific and conclusory allegation is insufficient to show that Plaintiff had any contractual relationship with the University.  Indeed, Plaintiff's other allegations, clearly show that she was, in fact, a student at Holy Cross College.  Plaintiff herself alleges that "[d]uring the events described herein, Jane was first enrolled as a full-time, tuition-paying, undergraduate student at Holy Cross College, a college affiliated with the University, in a program designed to transition her to Notre Dame, and pursuant to which she subsequently enrolled at the University."  (*Id.* ¶ 2.) Furthermore, she alleges that "[f]or the 2015/16 academic year, Jane was a student in the 'Notre Dame Gateway Program' at Holy Cross College which required her to attend one class at Notre Dame each semester."  (*Id.* ¶ 8.)  Although Plaintiff alleges that Holy Cross College is "affiliated" with Notre Dame, (*id.* ¶ 2), and asserts that she was a member of the Gateway Program that would "facilitate" her eventual enrollment at Notre Dame, it is clear from the face of Plaintiff's Complaint that, during the relevant time period in which she claims she had a contract with the University that was breached, she was an "undergraduate student at Holy Cross College."  (*Id.*)

    B.   *Plaintiff Does Not Identify a Contract, Policy, or Procedure that Notre Dame Breached.*

Even if Plaintiff had sufficiently alleged that she had contractual privity with the University, her threadbare allegations provide no specificity as to what "contractual" provisions she claims were breached and are insufficient to support a cause of action for breach of contract.

"To state claim for breach of contract, the plaintiff must . . . point to an identifiable contractual promise that the defendant failed to honor." *Ross v. Creighton Univ.,* 957 F.2d 410, 416-17 (7th Cir. 1992). Plaintiff generically asserts that Notre Dame failed to comply with "its policies and procedures" (Compl. ¶ 48), but does not specify which policy or procedure it ignored or even identify the contract that contains any supposedly breached policy.  Such conclusory allegations cannot stand and require dismissal.  *See Firth v. Yahoo!,* No. 3:10CV75-PPS/CAN, 2010 WL 2696286, at *3 (N.D. Ind. July 2, 2010) (dismissing a complaint where the "contract allegedly breached [was] not clearly identified"); *see also Bissessur v. Ind. Univ. Bd. of Trs.*, No. 1:07-CV-1290-SEB-WTL, 2008 WL 4274451, at *9 (S.D. Ind. Sept. 10, 2008); *Prasad v. Cornell Univ*., No. 5:15-cv-322, 2016 WL 3212079, at *20 (N.D.N.Y. Feb. 24, 2016) (granting motion to dismiss when plaintiff failed to allege what agreement defendant violated).

Nor has Plaintiff pled a breach of any implied covenant of good faith and fair dealing. Notably, Indiana law "does not impose a generalized duty of good faith and fair dealing on every contract."  *Perfect Flowers, Inc. v. Teleflora LLC,* No. 1:10-CV-1031-SEB-TAB, 2012 WL 2994636, at *3 (S.D. Ind. July 20, 2012).  And Plaintiff has not alleged that whatever contractual relationship she claims to have had with the University included a generalized implied duty of good faith and fair dealing.  Plaintiff simply does not (and cannot) point to any policies, implied or otherwise, which Notre Dame allegedly breached or contravened.

### C.  *Plaintiff Has Failed to Allege a Breach by Notre Dame.*

On its face, the Complaint fails to plead that Notre Dame's actions were arbitrary, capricious, or in bad faith, as required to show a breach of any "contract," implied or otherwise. "[A] student's breach of contract claim against a private university is treated somewhat differently from a typical breach of contract claim," and requires a plaintiff to allege "not only a breach, but

15

also that [the university's] conduct was arbitrary, capricious, or in bad faith." *Liu v. Nw. Univ.,* 78 F. Supp. 3d 839, 848 (N.D. Ill. 2015). Here, Plaintiff makes a bare assertion that Notre Dame "materially breached its contracts with [Doe] by failing to comply with its policies and procedures" but fails to identify with any specificity which University action, policy, or contract she alleges was implemented in an arbitrary or capricious manner. Such unsubstantiated allegations compel dismissal of her breach of contract claim. *See Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 602-04 (7th Cir. 2009) (affirming district court's dismissal of claim for breach of implied contract when plaintiff failed to point to any specific promise university made and complaint asserted a conclusory allegation that the university's actions were arbitrary, capricious, and undertaken in bad faith).

Nor has Plaintiff sufficiently alleged a breach based on generalized bad faith. Indiana courts have ruled that in the academic setting, "[a]bsent a showing of bad faith on the part of the university or a professor, the court will not interfere." *Neel v. Ind. Univ. Bd. of Trs.,* 435 N.E.2d 607, 611 (Ind. Ct. App. 1982). Indeed, "absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Gordon v. Purdue Univ.,* 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) (quoting *Turner v. Bd. of Aviation Comm'rs,* 743 N.E.2d 1153, 1171 (Ind. Ct. App. 2001)). In this case, Plaintiff's unsupported assertion that Notre Dame acted in a "manner inconsistent with [Doe's] reasonable expectations" is not sufficient to show that Notre Dame acted with a dishonest purpose and therefore breached its contractual obligations. (Compl. ¶ 49.) The fact that Notre Dame commenced an investigation of Roe, a student-athlete, for the serious offense of sexual assault in the face of Plaintiff's lack of cooperation actually refutes Plaintiff's

unsupported allegation that Notre Dame acted in bad faith to preserve its own interests and that of a student-athlete at Doe's expense.

### D. Plaintiff Has Failed to Allege Damages Caused by Notre Dame.

Finally, Plaintiff fails to satisfy the third element necessary to plead a breach of contract claim, because the damages alleged in the Complaint are too attenuated to be attributed to Notre Dame's conduct. "Under Indiana law, a plaintiff carries the burden to plead and prove damages. Importantly, a mere showing of a breach of contract does not necessarily entitle a plaintiff to damages. Instead, a plaintiff is limited to recovering only the losses actually suffered from the breach[.]" *Shepard v. State Auto. Mut. Ins. Co.,* 463 F.3d 742, 745 (7th Cir. 2006) (internal citations omitted); *Belle City Amusements, Inc. v. Doorway Promotions, Inc.,* 936 N.E.2d 243, 249 (Ind. Ct. App. 2010) ("The measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed.") (internal citations omitted).

Even assuming *arguendo* that a contract exists here, Plaintiff's damages are far removed from Notre Dame's conduct or any alleged breach of its policies. While Plaintiff contends that Notre Dame's investigation harmed her future ability to attend the University (Compl. ¶ 50), the timeline set forth in the Complaint demonstrates otherwise. As discussed above, Notre Dame's investigation of Plaintiff's sexual assault was closed in the Spring of 2016, and the accused transferred out of Notre Dame shortly thereafter. Plaintiff then enrolled at Notre Dame in the Fall of 2016 as a sophomore and completed the semester "in good academic standing." (*Id*. ¶ 12.) It was not until the following semester, in the Spring of 2017 – a year after her sexual assault and well after the close of Notre Dame's investigation – that Plaintiff withdrew from her studies. (*Id.*) Moreover, *Plaintiff herself* alleges that she "continues to deal with the psychological trauma of the

rape," a source of damages that is completely separate and apart from Notre Dame's investigation. (*Id.* ¶ 32.)  In short, notwithstanding her impermissible conclusory allegations, Plaintiff's allegations do not, as a matter of law, set forth damages reasonably attributable to Notre Dame's alleged breach.

### IV.    Plaintiff Has Failed to State a Claim for Negligence or Invasion of Privacy.

In Count III of the Complaint, Plaintiff purports to allege common-law claims for negligence and invasion of privacy.  Because Plaintiff's allegations fail to establish any cognizable cause of action for these torts as a matter of law, the claims must be dismissed.

### A.  *Plaintiff Has Not Pled the Elements of a Negligence Claim.*

Plaintiff's allegations under Count III attempt to impose liability on Notre Dame for alleged negligence which she asserts caused her a variety of intangible and financial injuries.  Yet rather than state a cogent theory of liability, Count III of her Complaint presents a scattershot array of allegations encompassing a dizzying variety of "duties" that Plaintiff claims Notre Dame breached: a duty of reasonable care in "selecting, training, and supervising competent coaches, athletic directors, and impartial investigators, to investigate and decide her case," (Compl. ¶ 51), a duty to protect her privacy, (*id.* ¶¶ 51-52), and a duty to protect her from "foreseeable harm" during the course of the Title IX investigation.  (*Id.* ¶¶ 53-54.)  Because the Complaint fails to identify any actual legal duty that Notre Dame bore and then breached in its handling of her sexual assault case, Plaintiff cannot proceed on her negligence claim.

"Negligence claims under Indiana law require proof of three elements:  (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty by the defendant; and (3) an injury resulted that was proximately caused by the defendant's breach."  *Decatur Ventures, LLC v. Stapleton Ventures, Inc.,* 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005).  "Where there is no duty, there can be

no breach, and thus the party cannot be found negligent." *Yost v. Wabash Coll.,* 3 N.E.3d 509, 515 (Ind. 2014).

Plaintiff's alleged negligence claim is not based on any recognized duties under state and federal law. As an initial matter, Plaintiff can point to no independent duty on the part of Notre Dame to protect her from harm in connection with her sexual assault investigation, apart from federal guidelines governing Title IX, already addressed herein. (*See* Section II, *supra.*) Nor does Plaintiff cite any recognized independent duty, outside of Title IX and Notre Dame's own policies, requiring coaches, athletic directors, or investigators to investigate her allegations or "vet athletes prior to their assimilation into the student body." (Compl. ¶30.)[5] In determining whether a duty exists under Indiana law, the Indiana Supreme Court has instructed that courts should consider: "(1) the relationship between the parties; (2) the foreseeability of the harm; and (3) public policy issues." *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind. 1994). Indiana courts have held that "[c]ollege students are not children and colleges 'are not expected to assume a role anything akin to *in loco parentis* or a general insurer.'" *Klobuchar v. Purdue Univ.,* 553 N.E.2d 169, 171 (Ind. Ct. App. 1990) (quoting *Campbell v. Bd. of Trs., of Wabash Coll.,* 495 N.E.2d 227, 232 (Ind. Ct. App. 1986)). In short, Plaintiff's reference to certain alleged generalized "duties" are not supported by law.

Likewise, Plaintiff's citation to federal law imposing establishing a "duty to protect her privacy" – presumably a reference to the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g – is misguided. It is well-established that FERPA provides no

---

[5] Plaintiff's allegations suggesting a duty by Notre Dame to "vet" incoming student athletes could be construed as akin to a negligent hiring and retention claim under Indiana law. However, such a claim requires allegations that "the defendant employer negligently retained an employee knowing that the employee was in the habit of misconducting himself." *Chivers*, 423 F. Supp. at 855. Notwithstanding the question of whether such an employment claim could even apply to a student, Plaintiff makes no allegation that Notre Dame had any basis to know or suspect that Roe was likely to engage in sexual misconduct.

private right of action and confers no enforceable rights on individuals like Doe. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287-289 (2002) (holding that "there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights" and that only the federal Department of Education can enforce FERPA). Moreover, federal guidance on Title IX explicitly contemplates that universities may need to disclose limited information about alleged sexual assault victims against that person's wishes in the course of a Title IX investigation. *See, e.g.,* U.S. Dept. of Education*, Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence*, at 18-20 (accessed at https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf) ("There are situations in which a school must override a student's request for confidentiality in order to meet its Title IX obligations. . . . [I]f the student [] requests that his or her name not be disclosed to the alleged perpetrator or that the school not investigate or seek action against the alleged perpetrator, the school will need to determine whether or not it can honor such a request while still providing a safe and nondiscriminatory environment for all students, including the student who reported the sexual violence."). In effect, federal law not only does not impose on Notre Dame the duty of privacy that Plaintiff suggests, but it expressly supports the very actions by Notre Dame that Plaintiff challenges in her Complaint.

Because the Complaint fails to establish the necessary elements of a duty and a breach, Plaintiff cannot set forth a negligence claim under Indiana law and the claim must be dismissed.

### B. Plaintiff's Negligence Claim Improperly Repackages the Breach of Contract Claim.

To the extent that Plaintiff's negligence claim is premised on duties set forth in Notre Dame's own policies and procedures, Plaintiff is effectively repackaging her breach of contract claim as a negligence claim in tort. However, "a contract claim disguised as a tort cannot survive under Indiana law." *Fritzinger v. Angie's List,* No. 1:12-cv-01118-JMS-DML, 2013 WL 772864,

at *3 (S.D. Ind. Feb. 28, 2013). "A plaintiff who brings both a breach of contract and a tort claim must show both that the defendant committed the separate and independent tort and that the tort resulted in injury distinct from the injury of the alleged breach." *Id.* at *2.

Though her breach of contract claim lacks specificity (*see* Section III, *supra*), Plaintiff alleges in her Complaint that Notre Dame disregarded its alleged contractual obligations to Doe during its investigation of the sexual assault. (*See* Compl. ¶¶ 47-48.) As a result of the alleged breach, Plaintiff states that she suffered "deteriorating physical and mental health" that forced her to withdraw from Notre Dame, lost tuition money and privacy, experienced psychological and physical injuries, and has experienced harm to her reputation and academic and career prospects. (*See id.* ¶¶ 12, 38, 50.) Simultaneously, Plaintiff contends that Notre Dame's negligence caused her those same damages. (*See id.* ¶ 56.) The Complaint fails to distinguish injuries Plaintiff experienced due to Notre Dame's alleged breach of contract from those she suffered as a result of Notre Dame's alleged negligence. Accordingly, this claim should be dismissed. *See Fritzinger,* 2013 WL 772864, at *4 (dismissing plaintiff's tort claim when she did not assert that the injury from the tort claim was different than the injury caused by the alleged breach of contract); *see also Doe v. Case W. Reserve Univ.,* Case No. 1:17 CV 414, 2017 WL 3840418, at *12 (N.D. Ohio Sept. 1, 2017) (dismissing plaintiff's negligence claim under state law[6] in part because the alleged duties were "not separate and independent duties created by common law that would exist" in the absence of a contract); *Doe v. Brown Univ.,* 166 F. Supp. 3d 177, 196 (D.R.I. 2016) (dismissing negligence

---

[6] Ohio law, like Indiana law, excludes recovery under a tort theory when the same case is presented under a breach of contract theory. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,* 684 N.E.2d 1261, 1271 (Ohio Ct. App. 1996).

claim reasoning that state law[7] did "not allow a tort claim to stand based upon the same duty underlying a contract claim").

C.    *Plaintiff's "Invasion of Privacy" Claim Must Similarly Be Dismissed.*

Finally, Plaintiff also appears to be alleging a claim for invasion of privacy. "The Indiana Supreme Court has recognized that the term 'invasion of privacy' is generally a label used to describe 'four distinct inquiries: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) public disclosure of private facts, and 4) false-light publicity.'" *Brown v. Wabash Nat'l Corp.,* 293 F. Supp. 2d 903, 905 (N.D. Ind. 2003) (quoting *Doe v. Methodist Hosp.,* 690 N.E.3d 681, 684 (Ind. 1997)). While Plaintiff attaches the "invasion of privacy" label to Count III of her Complaint, she does not clarify which of these potential claims she intends to bring, establish the elements of any of these claims, or allege any facts which would allow the Court to conclude she has stated a claim.

In fact, none of the invasion of privacy inquiries available under Indiana law provide a legally sufficient cause of action based on Plaintiff's allegations. Plaintiff cannot bring a claim for public disclosure of private facts because it "is not a recognized cause of action in Indiana." *Westminster Presbyterian Church of Muncie v. Yonghong Cheng,* 992 N.E.2d 859, 868 (Ind. Ct. App. 2013). The Complaint fails to state a claim for intrusion upon seclusion because that tort "occurs when there is 'an intrusion upon the plaintiff's *physical* solitude or seclusion as by invading [her] home or conducting an illegal search,'" which is not applicable here. *Id.* (quoting *Cullison v. Medly,* 570 N.E.2d 27, 31 (Ind. 1991)). Similarly, an appropriation of name or likeness claim is not available because Plaintiff does not contend that Notre Dame "use[d] the plaintiff's

---

[7] Rhode Island law, like Indiana law, does not allow a tort claim to proceed if Plaintiff's contract claim and tort claim "are based upon the same duty." *Ciccone v. Pitassi,* No. Civ. A. PB 97-4180, 2004 WL 2075120, at *7 (R.I. Super. Aug. 13, 2004).

name or likeness for [its] own [commercial] benefit." *Id.* at 869.  Finally, Notre Dame cannot be subject to a false-light claim because Plaintiff does not assert that Notre Dame has "give[n] publicity to a matter concerning [plaintiff] that place[d] [her] before the public in a false light[.]" *St. John v. Town of Elletsville,* 46 F. Supp. 2d 834, 851 (S.D. Ind. 1999).  Plaintiff has not and cannot state a claim for any of the privacy torts and so this claim should be dismissed with prejudice.

### <u>CONCLUSION</u>

For the reasons set forth above Defendant asks the Court to grant the motion to dismiss with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: September 18, 2017                                   Respectfully submitted,

                                                            /s/*Matthew Kennison*

                                                            Matthew Kennison
                                                            RILEY SAFER HOLMES & CANCILA LLP
                                                            121 W. Washington St., Suite 402
                                                            Ann Arbor, Michigan 48104
                                                            (312) 471-8758
                                                            Fax: 312-471-8701
                                                            Email: mkennison@rshc-law.com

                                                            Sandra L. Musumeci
                                                            Ryan P. Poscablo
                                                            RILEY SAFER HOLMES & CANCILA LLP
                                                            1330 Avenue of the Americas, 6th Floor
                                                            New York, New York 10019
                                                            Phone: 212-660-1000
                                                            Fax: 212-660-1001
                                                            Email: smusumeci@rshl-law.com
                                                                      rposcablo@rshc-law.com

23

Ronald S. Safer
Joy L. Anderson
Sarah E. Finch
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Phone: 312-471-8700
Fax: 312-471-8701
Email: rsafer@rshc-law.com
        janderson@rshc-law.com
        sfinch@rshc-law.com

*Attorneys for Defendant*
*University of Notre Dame*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2017, I electronically filed the foregoing in the

United States District Court for the Northern District of Indiana using the CM/ECF system which

will send a notice of electronic filing to the following CM/ECF-registered counsel of record:

Peter J. Agostino
Stephanie L. Nemeth
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601

Parties may access this filing through the Court's system.

*/s/ Matthew Kennison*