**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

JANE DOE,                          )
                                   )
            Plaintiff,             )
                                   )   Case No. 3:17-cv-00690-PPS-MGG
        v.                         )
                                   )
UNIVERSITY OF NOTRE DAME,          )
                                   )
            Defendant.             )


**DEFENDANT UNIVERSITY OF NOTRE DAME'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

   I.    Plaintiff's Title IX Claim Should Be Dismissed............................................................ 1

      A.   Plaintiff's Pre-Assault Theory Lacks Factual Support and Is Belied by the Complaint ......... 2

      B.   Plaintiff's Post-Assault Allegations Are Facially Implausible and Factually Unsupported .... 5

      C.   A Title IX Claim May Not Be Used to Second Guess Disciplinary Decisions ...................... 7

      D.   Plaintiff Fails to Set Forth that Notre Dame's Actions Were Motivated by Gender ............ 8

   II.   Plaintiff Has Failed To Allege a Cause of Action For Breach of Contract. ................................ 9

      A.   Plaintiff Has Failed to Identify a "Contract" or a Breach by Notre Dame ........................... 9

      B.   Plaintiff Has Failed to Sufficiently Allege Notre Dame's Conduct Was Arbitrary, Capricious, or In Bad Faith ......................................................................................... 11

      C.   Plaintiff Has Failed to Allege Damages Caused by Notre Dame ........................................ 12

   III.   Plaintiff's Negligence and Invasion of Privacy Claims Must be Dismissed. ......................... 12

      A.   Plaintiff Has Not Alleged Notre Dame Owed Her a Legal Duty......................................... 13

      B.   Plaintiff's Negligence Claim is Duplicative of the Breach of Contract Claim ..................... 15

      C.   Plaintiff Effectively Concedes Dismissal of Her Invasion of Privacy Claim ....................... 15

CONCLUSION ....................................................................................................................... 155

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbariao v. Hamline Univ. Sch. of Law*,
 258 N.W.2d 108 (Minn. 2017) ...........................................................................................14

*Alioto v. Town of Lisbon*,
 651 F.3d 715 (7th Cir. 2011) .............................................................................................15

*Ashcroft v. Iqbal*,
 556 U.S. 662, 681 (2009) ........................................................................................... 6, 7, 8

*Bell Atlantic Corporation v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................... 3, 6, 7

*Bissessur v. Indiana University Board of Trustees*,
 581 F.3d 599 (7th Cir. 2009).........……………………………………………………............9, 11

*Butters v. James Madison Univ.*,
 145 F. Supp. 3d 610 (W.D. Va. 2015).................................................................................7

*Chivers v. Cent. Noble Cmty. Sch.*,
 423 F. Supp. 2d 835 (N.D. Ind. 2006) ........................................................................... 2, 7

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
 526 U.S. 629 (1999) ..................................................................................................... 1, 2, 7

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
 373 F. Supp. 2d 829 (S.D. Ind. 2005) ......................................................................... 13, 15

*Doe 1 v. Baylor University*,
 240 F. Supp. 3d 646 (W.D. Tex. 2017)....................................................................... 4, 5, 10

*Doe v. Univ. of Notre Dame*,
 No. 3:17CV298-PPS/MGG, 2017 WL 1836939 (N.D. Ind. May 8, 2017) .....................10

*Doe v. Univ. of S.*,
 No. 4:09-cv-62, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011) ......................................14

*Doe v. Univ. of St. Thomas*,
 240 F. Supp. 3d 984 (D. Minn. 1977) ...............................................................................14

*Doe v. University of Tennessee*,
 186 F. Supp. 3d 788 (M.D. Tenn. 2016) .................................................................... 3, 9, 10

*Frazier v. Fairhaven Sch. Comm.*,
 276 F.3d 52 (1st Cir. 2002) .................................................................................................8

*Fritzinger v. Angie's List*,
 No. 1:12-cv-01118-JMS-DML, 2013 WL 772864 (S.D. Ind. Feb. 28, 2013)....................15

*Hernandez v. Baylor Univ.*,
 No. 6:16-CV-69-RP, 2017 WL 1322262 (W.D. Tex. Apr. 7, 2017) ....................................4

*Hi-Tec Properties, LLC v. Murphy*,
 14 N.E.3d 767 (Ind. Ct. App. 2014) ..................................................................................12

*Johnson v. Wal-Mart Stores, Inc.*,
 588 F.3d 439 (7th Cir. 2009) .............................................................................................12

*Karasek v. Regents of the University of California*,
 No. 15-CV-03717-WHO, 2015 WL 8527338 (N.D. Cal. Dec. 11, 2015) ...........................5

*Liu v. Nw. Univ.*,
  78 F. Supp. 3d 839 (N.D. Ill. 2015) ...................................................................11

*Massey v. Merrill Lynch & Co., Inc.*,
  464 F.3d 642 (7th Cir. 2006) .............................................................................10

*Moore v. Regents of the University of California*,
  No. 15-CV-05779-RS, 2016 WL 2961984 (N.D. Cal. May 23, 2016) ...................5

*Raethz v. Aurora Univ.*,
  346 Ill. App. 3d 728 (Ill. App. 2d 2004) ...........................................................11

*Rex v. West Virginia School of Osteopathic Medicine*,
  119 F. Supp. 3d 542 (S.D.W. Va. 2015) ...............................................................5

*Rubber Shop, Inc. v. Benicorp Ins. Co.*,
  No. 3:05-CV-279-RM, 2006 WL 346327 (N.D. Ind. Feb. 13, 2006) ...................9

*Shank v. Carleton Coll.*,
  232 F. Supp. 3d 1100 (D. Minn. 2017) ...............................................................14

*Shepard v. State Auto. Mut. Ins. Co.*,
  463 F.3d 742 (7th Cir. 2006) .............................................................................12

*Smith v. Union Pac. R.R. Co.*,
  474 F. App'x 478 (7th Cir. 2012) .......................................................................13

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) .......................................................................... 7, 8

*Williams v. Board of Regents of University System of Georgia*,
  477 F.3d 1282 (11th Cir. 2007) ....................................................................... 3, 9

*Yost v. Wabash College*,
  3 N.E.3d 509 (Ind. 2014) ............................................................................ 13, 14

## Additional Authorities

U.S. Dept. of Education, *Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence (Archived)*, at 18-20 (accessed at *https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf*) ...............................................................................................14

## INTRODUCTION

Plaintiff's Response in Opposition to the Motion to Dismiss ("Response") highlights the chasm between what the Complaint actually alleges and Plaintiff's unsupported conclusion that the University of Notre Dame ("Notre Dame" or "the University") is liable to her under Title IX and theories of breach of contract and negligence. It was Notre Dame, not Plaintiff, that launched an investigation into a report that Plaintiff was sexually assaulted. Plaintiff admits she wanted no part of the investigation and that she did not cooperate, and when Plaintiff said she wanted the investigation closed, Notre Dame ultimately did so. Now, one year later, Plaintiff makes several vague and factually unsupported contentions that Notre Dame's actions were unreasonable and violated Title IX because the University allegedly did not do enough to help her. In addition to the lack of plausible factual allegations, Plaintiff's pleading fails to state legally sufficient causes of action for gender discrimination under Title IX, breach of contract, negligence, and invasion of privacy. Accordingly, the Court should dismiss the Complaint.

## ARGUMENT

### I.    Plaintiff's Title IX Claim Should Be Dismissed.

In 1999, when considering the governing standard for a private right of action under Title IX, the U.S. Supreme Court made it clear that it was appropriate to dismiss legally and factually deficient Title IX claims at the motion to dismiss stage.[1]  *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649 (1999) ("In an appropriate case, there is no reason why courts, on a motion to dismiss, . . . could not identify a response as not 'clearly unreasonable' as a matter of law.").  "As long as the school's response is not 'clearly unreasonable,'" this Court has held, "it cannot have acted

---

[1] Plaintiff's argument that cases dealing with "summary judgment issues" do not support dismissal here is of no moment. (Response ("Resp.") at 9.)  As the *Davis* Court expressly stated, it is entirely proper for district courts to dismiss legally and factually deficient claims on a Rule 12 motion where, as here, the facts as pled do not support recovery for a Title IX plaintiff.  *Davis*, 526 U.S. at 649.

with the requisite deliberate indifference to incur Title IX liability." *Chivers v. Cent. Noble Cmty. Sch.*, 423 F. Supp. 2d 835, 847 (N.D. Ind. 2006) (citing *Davis,* 526 U.S. at 648-49). Plaintiff's Complaint, and now her Response, fail to articulate any legally cognizable theory of how Notre Dame's response to a sexual assault report involving Plaintiff was "clearly unreasonable" and therefore constituted deliberate indifference under Title IX.

Plaintiff now appears to be advancing two distinct theories of Title IX liability. First, Plaintiff argues she "has plainly alleged that the University of Notre Dame was deliberately indifferent *to the threat* of sexual assault against women on its campus[.]" (Resp. at 5 (emphasis added).) Second, Plaintiff claims Notre Dame "misused its Title IX process to intimidate and pressure a victim to drop a complaint against a football player to allow him to transfer away from the school." (*Id.*) Plaintiff seems to argue that Notre Dame is liable for both pre-assault conduct (*i.e.*, indifferent "to the threat" of sexual assault) and post-assault conduct (*i.e.*, indifferent in its response to Plaintiff's sexual assault). Ultimately, however, the Complaint fails to articulate any plausible, factually-supported theory that Notre Dame's conduct was "clearly unreasonable" under *Davis*, and her Complaint should therefore be dismissed.

### A. Plaintiff's Pre-Assault Theory Lacks Factual Support and Is Belied by the Complaint

Plaintiff argues that she alleged that Notre Dame was deliberately indifferent to the threat of sexual assault against women on its campus. She claims Notre Dame "encouraged and allowed" a football player to transfer so that it could protect its reputation and "free[] up a football scholarship" (*id.* at 6, 14), that Notre Dame failed to "properly vet" its student-athletes (Complaint ("Compl.") ¶¶ 30, 35), and that this is all "part of a pattern of activity at the University" which Plaintiff refers to as a "shell game." (Resp. at 3, 6-7.) Plaintiff, however, alleges no facts – *none* – to support this theory and, indeed, her own Complaint directly contradicts it.

Instead of pleading facts to support her claims, as is required by *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), Plaintiff instead attempts to tie this case to several unrelated and factually dissimilar cases involving different universities. Plaintiff argues these other instances allow her Complaint to survive a motion to dismiss because they demonstrate that "this problem appears to be widespread among universities." (Resp. at 8.) In other words, Plaintiff attempts to mask the patent factual deficiencies in her Complaint by imputing the conduct of *other universities* to Notre Dame. But this cannot, as a matter of law, provide the factual basis necessary to sustain a Title IX claim against Notre Dame. Quite simply, pointing to what may have occurred *at different universities* and calling it a trend is no substitute for the requirement that Plaintiff plead facts to support that *Notre Dame* violated Title IX. *Twombly,* 550 U.S. at 555.

Moreover, the cases cited by Plaintiff are so factually dissimilar from the instant case that they actually illustrate why dismissal is appropriate here. For example, in *Williams v. Board of Regents of University System of Georgia*, the University of Georgia failed to supervise a student who had a well-documented history of engaging in sexual misconduct and failed to initiate an investigation into a reported sexual assault for nearly a year. 477 F.3d 1282, 1296-97 (11th Cir. 2007). Similarly, in *Doe v. University of Tennessee*, unlike Plaintiff here, the plaintiff alleged "far more than UT's knowledge of general risks or stereotypical assumptions." 186 F. Supp. 3d 788, 807 (M.D. Tenn. 2016). Indeed, the court observed "that UT was put on notice of *a specific and concrete pattern* of an 'inordinate' number of sexual assault allegations against members of specific teams within the UT Athletic Department[.]" *Id.* (emphasis added). Plaintiff alleges nothing of the sort here.

The two Baylor cases likewise do not help Plaintiff's claims. Both of those related cases included ample factual support for plaintiffs' claims of a systemic problem with sexual assault on Baylor's campus. *Doe 1 v. Baylor University* involved ten individual plaintiffs who each alleged "that Baylor did nothing (or almost nothing) in response to the reports of sexual assault," and that in each

3

case, "Baylor discouraged her from reporting her assault(s), failed to adequately investigate each the assaults, and failed to ensure she would not be subjected to continuing assault and harassment." 240 F. Supp. 3d 646, 660–61 (W.D. Tex. 2017). The other Baylor case Plaintiff cites is even more inapt. The plaintiff there alleged that Baylor "failed to address and actively concealed sexual violence committed by its football players for several years," and "that university staff were repeatedly and directly informed of sexual assaults committed by football players and neither reported the misconduct nor conducted appropriate investigations." *Hernandez v. Baylor Univ.*, No. 6:16-CV-69-RP, 2017 WL 1322262, at *3, 6 (W.D. Tex. Apr. 7, 2017). The plaintiff there also alleged "that Baylor knew of at least six previous assaults committed by [her assailant] against female students and was aware that [her assailant] had been cited for misdemeanor sexual assault, but failed to take any protective action." *Id.* at *6.

This case stands in stark contrast. Plaintiff makes no factual allegations that would render Notre Dame's conduct "clearly unreasonable" to establish deliberate indifference under Title IX. Plaintiff alleges no facts indicating that her assailant had a history of sexual violence or that Notre Dame failed to take proper precautions in vetting or supervising him. Nor are there any facts suggesting "a specific and concrete pattern of an 'inordinate' number of sexual assault allegations" against Notre Dame student-athletes. *Univ. of Tenn.*, 186 F. Supp. 3d at 807. What Plaintiff does admit, however, is that Notre Dame requires all of its students – which includes its student-athletes – "to take mandatory educational sessions on the topics of alcohol abuse, sexual misconduct, and student's rights and remedies under state and federal law as required by the Office of Civil Rights

(OCR)[.]" (Compl. ¶ 29.)[2]  In other words, Plaintiff's own Complaint cites actions that Notre Dame took to prevent sexual assaults and fails to articulate any facts suggesting that Notre Dame's efforts to prevent sexual assaults by athletes were "clearly unreasonable."  Plaintiff's pre-assault theory does not withstand scrutiny.

B. *Plaintiff's Post-Assault Allegations Are Facially Implausible and Factually Unsupported*

Plaintiff's post-assault allegations fare no better, as they are facially implausible and unsupported by any facts.  Indeed, if Plaintiff's claims are correct and Notre Dame's ultimate goal was to "avoid moving forward with its own Title IX process" in order to protect its "golden brand," one must ask why Notre Dame would have initiated the Title IX process in the first place, particularly when Plaintiff admits that she was "dragged" into the investigation and refused to cooperate. Construing the facts most favorably to Plaintiff, her claim simply does not add up.

Moreover, Plaintiff's contentions that Notre Dame merely "started an investigation" and provided only a "minimalist response" are belied by the very facts pled in her Complaint.  (Resp. at 10.)  Indeed, there are no facts suggesting that Notre Dame "did nothing" in response to the report of her sexual assault, or that Notre Dame "failed to address and actively concealed sexual violence committed by its football players for several years."  *See, e.g., Doe 1*, 240 F. Supp. 3d at 660–61; *Hernandez*, 2017 WL 1322262, at *6.[3]  On the contrary, the Complaint demonstrates that Notre Dame

---

[2] Plaintiff's pre-assault allegations are more akin to *Moore v. Regents of the University of California*, No. 15-CV-05779-RS, 2016 WL 2961984 (N.D. Cal. May 23, 2016) and *Karasek v. Regents of the University of California*, No. 15-CV-03717-WHO, 2015 WL 8527338 (N.D. Cal. Dec. 11, 2015).  In *Moore*, the court granted a motion to dismiss a complaint that made only "general allegations regarding the university's inadequate response to sexual violence" and found that plaintiff failed to allege "the university had any specific knowledge of a heightened risk of sexual assault either by John Doe or in the particular context in which the assault occurred."  2016 WL 2961984 at *9.  And in *Karasek*, the court granted a motion to dismiss plaintiffs' claims because they failed to allege "that the University had any specific knowledge of a heightened risk of sexual assault either by their particular assailants or in the particular contexts in which their assaults occurred."  2015 WL 8527338, at *9.

[3] Similarly, Plaintiff's likening of this case to *Rex v. West Virginia School of Osteopathic Medicine*, 119 F. Supp. 3d 542 (S.D.W. Va. 2015), is vastly overstated.  In *Rex*, the plaintiff alleged the school "had no procedures in place at the time of her attack, leaving her to search out support from unprepared [school] officials," that the school "deliberately deprived her of both internal and external forms of support," and that "after ignoring or even encouraging continued harassment, informed her that she could not be protected on campus and facilitated her withdrawal."  *Id.* at 551.  The Complaint here is devoid of

officials took several actions to address her allegations of sexual assault before closing the investigation after her refusal to cooperate, including: notifying the Title IX office immediately upon learning of the assault (Compl. ¶ 18); launching an investigation within a week (*id.*); successfully identifying her attacker *despite* a refusal by Plaintiff to even provide his name (*id.* ¶ 20); putting a no-contact order in place between Plaintiff and her attacker (*id.*); and confronting her attacker as part of the investigation (*id.* ¶ 23).

Nor is there merit to Plaintiff's argument that Notre Dame "discouraged" her from proceeding with a formal Complaint. Here again, Plaintiff's own allegations undermine her conclusion. Indeed, far from "discouraging" her, Plaintiff alleged that Notre Dame "dragged her into an investigation she did not want opened." (Resp. at 4; Compl. ¶¶ 1, 27, 37.) Plaintiff also admits that she "made it clear she did not want to make a report," that she "did not want to participate in an investigation," and "did not want to disclose the perpetrator's name or residence." (Compl. ¶ 19.) She also admits her father called Notre Dame's Title IX office multiple times to halt (or at least stall) the investigation, (*id.* ¶¶ 21-23), and that "she agreed to close it." (*Id.* ¶ 12.)

Plaintiff also claims that Notre Dame "recommend[ed]" she close the Title IX investigation and argues that this was done to allow the football player to transfer.[4] (Resp. at 3.) Plaintiff offers no factual support for her contention that Notre Dame did this to benefit . . . its interests," (*id.*), and this Court is not obligated to accept such "bald allegations" or "legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009); *Twombly,* 550 U.S. at 555. Even the most charitable interpretation of this allegation can only raise the mere possibility of misconduct, which is insufficient to state a claim under *Twombly.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

---

any factual allegations of this nature, and in fact, to the contrary, notes that Notre Dame issued a "no-contact" order to protect Plaintiff from any contact with her assailant. (Compl. ¶ 20.)

[4] Contrary to the allegations and characterizations in Plaintiff's Complaint and Response that Notre Dame pressured her to close the investigation (Compl. ¶ 12, Resp. at 3), Plaintiff herself indicated that she wanted the investigation to close. (Compl. ¶ 12.)

it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Plaintiff here "must do better than put[] a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

### C. A Title IX Claim May Not Be Used to Second Guess Disciplinary Decisions

In Title IX cases, victims do not have a "right to particular remedial demands[,]" and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Plaintiff attempts to side-step these well-established principles by claiming that she "is not arguing that her rapist should have been expelled as opposed to suspended, or that she is unhappy with the manner in which discipline was issued." (Resp. at 12.) Rather, "her issue is that the school issued no discipline *whatsoever* and simply assisted her rapist to transfer to another school." (*Id.* (emphasis in original).)[5]

This is nothing more than a thinly-veiled attempt to end-run *Davis*'s holding. By alleging that there was "no discipline *whatsoever*," (*id.*), Plaintiff "is essentially asking this court to 'second guess' the School's decisions. That is not the Court's role." *Chivers*, 423 F. Supp. 2d at 850. Tellingly, Plaintiff never explains what Notre Dame *should* have done, particularly in light of Plaintiff's refusal to cooperate with the investigation and her agreement to close the matter. The Supreme Court long ago determined that courts should refrain from second-guessing the disciplinary decisions made by school administrators, and this Court should not engage in that exercise now.

---

[5] Plaintiff relies heavily on *Butters v. James Madison Univ.*, 145 F. Supp. 3d 610, 619 (W.D. Va. 2015), to support her argument, but this case is of little use to Plaintiff. In denying a motion to dismiss, the district court in *Butters* focused on the university's failure "to conduct any investigation or take any action after learning about the assault and the existence and continued dissemination of the video," not any perceived inadequate discipline doled out by the school. *Butters*, 145 F. Supp. 3d at 619, 621 n.7 ("JMU's failure to take any steps to halt the dissemination of the video or to otherwise protect Butters from further harassment, particularly where there was a recording that, at least to some degree, supported her version of events, renders dismissal inappropriate.").

### D. *Plaintiff Fails to Set Forth that Notre Dame's Actions Were Motivated by Gender*

Plaintiff's Response demonstrates a profound misunderstanding of the basic requirements for a Title IX claim. "Discrimination on the basis of sex is the *sine qua non* of a Title IX sexual harassment case, and a failure to plead that element is fatal." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002). However, this comes as a "shocking proposition" to Plaintiff. (Resp. at 15.) At the heart of Plaintiff's Complaint, as confirmed by her Response, is that Notre Dame was motivated by a desire to "preserv[e] its reputation." (*Id.* at 14.) That Plaintiff's Complaint relates to a male football student-athlete assaulting a female student does not, without more, suggest gender discrimination. To illustrate, Plaintiff's theory that Notre Dame elevates its reputation over students' interests would be just as consistent with a scenario where a women's basketball player was accused of sexual assault against another female student, and was thereafter "allowed" to transfer without first being disciplined. Standing alone, therefore, Plaintiff's claim that Notre Dame was acting to preserve its reputation is insufficient to state a claim of gender discrimination under Title IX. *See Iqbal*, 556 U.S. at 678.

Plaintiff's citation to the Georgia, Tennessee, and Baylor cases does not support her contention that Notre Dame's alleged interest in protecting its athletes and its reputation amounts to gender discrimination. As discussed above, those unrelated cases involved starkly different scenarios and were supported by factual allegations of discriminatory policies and customs involving certain men's sports teams. Here, Plaintiff has pled nothing to support that Notre Dame has engaged in similar institutionally-discriminatory policies or customs. On the contrary, Plaintiff's Complaint does little more than assume that Notre Dame's actions must have been motivated by gender because a male football player is involved. That is not enough, as a matter of law, to demonstrate discrimination based on gender. *See Swanson,* 614 F.3d at 403.

## II.    Plaintiff Has Failed To Allege a Cause of Action For Breach of Contract.

On its face, the Complaint fails to plead even the most basic elements of breach of contract sufficient to survive dismissal.  Plaintiff's Response does little to rescue the bare allegations in the Complaint, and instead further demonstrates that Plaintiff has not pointed to any alleged "contract" or specific contractual provisions that Notre Dame allegedly breached, nor has she pled any damages attributable to Notre Dame's conduct.

### A.  Plaintiff Has Failed to Identify a "Contract" or a Breach by Notre Dame

Setting aside that Plaintiff's breach of contract claim is premised on the unpled claim that she was a Notre Dame student, Plaintiff may not sustain a breach of contract action without pointing to a "contract" that was breached.[6]  In *Bissessur v. Indiana University Board of Trustees*, the Seventh Circuit found that by failing to identify the specific promises that the University supposedly failed to keep, the plaintiff failed to state a claim:

> A plaintiff may not escape dismissal on a contract claim, for example, by stating that he had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract.  What was the contract?  The promises made?  The consideration?  The nature of the breach?

581 F.3d 599, 603 (7th Cir. 2009).  Similarly, here, Plaintiff's Complaint raises the same questions and contains only vague allusions to alleged promises.  Importantly, the Complaint fails to notify Notre Dame which procedures it allegedly violated and how.  Indeed, Plaintiff *concedes* in the Response that the "original state court pleading does not include direct citations to the University of Notre Dame's

---

[6] As fully outlined in Notre Dame's Memorandum of Law in Support of its Motion to Dismiss ("Motion"), Plaintiff's Complaint alleges that "[d]uring the events described herein, Jane was first enrolled as a full-time, tuition-paying, undergraduate student at Holy Cross College[.]"  (Compl. ¶ 2.)  Plaintiff's attempt to amend her Complaint by attaching extrinsic information to the Response is procedurally improper and should be wholly disregarded by the Court.  *See Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint."); *Rubber Shop, Inc. v. Benicorp Ins. Co.*, No. 3:05-CV-279-RM, 2006 WL 346327, at *1 (N.D. Ind. Feb. 13, 2006) (granting defendant's motion to strike plaintiff's submission of documents in response to defendant's motion to dismiss and recognizing that "documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss") (internal citations omitted).

student codes, catalogues, bulletins, or regulations[.]" (Resp. at 20.) The absence of such foundational allegations compels dismissal of the breach of contract claim.[7]

However, even if the Court considers Plaintiff's new allegation, raised for the first time in her Response, that Notre Dame's online "Frequently Asked Questions" forms the basis for a contract, dismissal is still warranted.[8] (Resp. at 21, Ex. 4.) This "policy" clearly states that reports to *certain* sources (*i.e.,* off-campus resources, University Health Services, University Counseling Center) may remain confidential. (*Id.*) Here, the investigation was initiated after a report to an Assistant Rector, who in turn notified Notre Dame's Title IX office. (Compl. ¶¶ 10, 18.) Further, Plaintiff's Exhibit 5 unequivocally states that "in some cases . . . the University may not be able to agree to the complainant's request [for anonymity] in order to adhere to its obligation to provide a safe, non-discriminatory environment for all students."[9] (Resp. at 21, Ex. 5.) Accordingly, consideration of matters outside of the pleadings only reveals that Notre Dame adhered to its policies by taking the information about Plaintiff's sexual assault seriously and complying with its obligations by investigating Plaintiff's allegations, notwithstanding her lack of cooperation. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006) ("[A] party may plead itself out of court by either

---

[7] Plaintiff also improperly relies on this Court's preliminary injunction opinion in *Doe v. University of Notre Dame* (an unrelated case) to bolster its position that there was an identifiable and enforceable contract between Plaintiff and Notre Dame. (Resp. at 17, citing *Doe v. Univ. of Notre Dame,* No. 3:17CV298-PPS/MGG, 2017 WL 1836939, at *9 (N.D. Ind. May 8, 2017).) The question of whether Plaintiff has pled the existence of a specific contractual provision that was breached in order to survive dismissal is separate and distinct from the matter before the court in *Doe,* where the Court, at the preliminary injunction stage, asked "only whether [plaintiff] has a *better than negligible chance of succeeding*" on the merits of his claims. 2017 WL 1836939, at *9 (emphasis added).

[8] Plaintiff's new argument in the Response that she was denied counseling services should similarly be disregarded by this Court. (Resp. at 21.) The Complaint fails to allege Plaintiff sought or was denied counseling serves. (*See generally,* Compl.) Rather, Plaintiff alleged that she desired to "privately" deal with the incident. (Compl. ¶ 27.)

[9] It bears noting that the five unauthenticated exhibits that Plaintiff attached to her Response all appear to have been retrieved from the internet on October 16, 2017. In particular, Exhibit 5 is an excerpt from *duLac: A Guide to Student Life,* printed on October 16, 2017. *duLac* is updated annually, and Exhibit 5 does not reflect the policies that were in effect at the time of the events at issue in the Complaint.

10

including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same.").

B. *Plaintiff Has Failed to Sufficiently Allege Notre Dame's Conduct Was Arbitrary, Capricious, or In Bad Faith*

Plaintiff acknowledges in the Response that "[t]he standard for reviewing a university's actions on a contract theory are whether or not the educational institution acted illegally, arbitrarily, capriciously, or in bad faith." (Resp. at 17.) *See also Liu v. Nw. Univ.,* 78 F. Supp. 3d 839, 848 (N.D. Ill. 2015) ("[A] student's breach of contract claim against a private university is treated somewhat differently from a typical breach of contract claim," and requires a plaintiff to allege "not only a breach, but also that [the university's] conduct was arbitrary, capricious, or in bad faith."); *Raethz v. Aurora Univ.,* 346 Ill. App. 3d 728, 732 (Ill. App. 2d 2004) ("The burden of establishing arbitrary or capricious conduct is a heavy one."). Under this standard, it is clear that the Complaint fails to plead that Notre Dame's actions were arbitrary, capricious, or in bad faith.

Plaintiff makes a bare assertion that Notre Dame "materially breached its contracts with [Doe] by failing to comply with its policies and procedures" (Compl. ¶ 48), but fails to identify with any specificity which University action, policy, or contract she alleges was implemented in an arbitrary or capricious manner. *See Bissessur,* 581 F.3d at 602-04 (affirming district court's dismissal of claim for breach of implied contract where plaintiff's complaint asserted a conclusory allegation that the university's actions were arbitrary, capricious, and undertaken in bad faith). Indeed, Plaintiff's only suggestion of bad faith – that the "University promises confidentiality and help to victims which it refused to provide to the Plaintiff" – is directly refuted by Plaintiff's *own exhibits*, which clearly state that anonymity cannot be guaranteed. (Resp. at 21; Ex. 5.) *See* Section II.A., *supra.* Plaintiff's breach of contract claim should therefore be dismissed.

*C.   Plaintiff Has Failed to Allege Damages Caused by Notre Dame*

Plaintiff's argument in the Response that her alleged damages can be ascertained from "inferences that can be drawn from the Complaint" misses the mark.  "Under Indiana law, a plaintiff carries the burden to plead and prove damages."  *Shepard v. State Auto. Mut. Ins. Co.,* 463 F.3d 742, 745 (7th Cir. 2006) (applying Indiana law) (internal citations omitted).  Plaintiff has not satisfied that burden.

As fully discussed in Notre Dame's Motion, while Plaintiff contends that Notre Dame's investigation harmed her future ability to attend the University (Compl. ¶ 50), the Complaint fails to plead facts from which one could reasonably link the damages that Plaintiff alleges to Notre Dame's conduct.  Rather, the Complaint's allegations are vague and suggest attenuation between Notre Dame's actions and Plaintiff's withdrawal from school.  For example, the Complaint alleges that Plaintiff withdrew from her studies in the Spring of 2017, nearly one year after her sexual assault and the close of Notre Dame's investigation.  (*Id.* ¶ 12.)  In short, Plaintiff's Complaint does not allege any facts sufficient to support Plaintiff's contention that her damages were caused by an alleged breach by Notre Dame.  *See, e.g., Hi-Tec Properties, LLC v. Murphy*, 14 N.E.3d 767, 776 (Ind. Ct. App. 2014) (holding the damages claimed for a breach of contract must be the natural, foreseeable, and proximate consequence of the breach).  Accordingly, this Court should dismiss the complaint.  *See Johnson v. Wal-Mart Stores, Inc.,* 588 F.3d 439, 445 (7th Cir. 2009) ("Courts remain entirely free to dismiss a claim supported by prima facie evidence where the pleadings do not permit a reasonable inference of proximate cause.").

**III.   Plaintiff's Negligence and Invasion of Privacy Claims Must be Dismissed.**

Plaintiff's Response improperly attempts to amend the negligence claim, fails to identify a legal duty Notre Dame owed her, concedes that she has repackaged the breach of contract claim as a tort, and abandons her invasion of privacy claim.  Accordingly, both claims must be dismissed.

A. *Plaintiff Has Not Alleged Notre Dame Owed Her a Legal Duty*

"Negligence claims under Indiana law require proof of three elements:  (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury resulted that was proximately caused by the defendant's breach." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.,* 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005).  "Where there is no duty, there can be no breach, and thus the party cannot be found negligent."  *Yost v. Wabash College,* 3 N.E.3d 509, 515 (Ind. 2014).

Rather than clarifying which allegations in her Complaint identify an independent legal duty that she claims Notre Dame owed her, Plaintiff's Response asserts that Notre Dame owed her several duties, including a duty of care in the operation of its Title IX process, a duty to protect Plaintiff's privacy and confidentiality, and a general duty to protect her from foreseeable harm.[10]  To the extent that Plaintiff's Response raises new or different allegations than the Complaint, the Court should disregard them.  *See Smith v. Union Pac. R.R. Co.,* 474 F. App'x 478, 480–81 (7th Cir. 2012) (holding that the district court "correctly disregarded" the response, "because the response brief paint[ed] a narrative different than that alleged in [the] complaint").  Further, Plaintiff improperly relies on extrinsic documents attached to her Response to establish Notre Dame's alleged duties.[11]

Plaintiff's negligence claim is not based on any recognized duties under state or federal law, and Plaintiff has pointed to no independent duty of Notre Dame to protect her from harm in connection with her sexual assault investigation other than the federal guidelines governing Title IX. (Motion at 6-13.)  Moreover, that guidance explicitly indicates that universities may need to disclose limited information about sexual assault victims against that person's wishes during a Title IX

---

[10]  Plaintiff seemingly abandons her allegation that Notre Dame owed her a duty of care in "selecting, training, and supervising competent coaches, athletic directors, and impartial investigators, to investigate and decide her case."  (Compl. ¶ 51.)

[11] As discussed above, the Court should also ignore those attachments.  *See Rosenblum*, 299 F.3d at 661; *Rubber Shop, Inc.,* 2006 WL 346327, at *1.

investigation.  (Motion at 20 (citing U.S. Dept. of Education, *Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence (Archived)*, at 18-20 (accessed at *https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf*).)

Plaintiff asserts that Indiana common law recognizes that one may assume a duty based on its conduct.  *See Doe #1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 205 (Ind. 2017) (acknowledging that one may assume a duty based on conduct, but refusing to impose a duty).  In discussing the assumption of a duty by conduct, however, Plaintiff fails to mention that under Indiana law, while a duty may attach to "an actor who undertakes to tender services to another," courts "impose these duties cautiously" and the "'undertaking' element sets a high bar" that "is not cleared when [a party] merely references some type of pre-existing rule—like a regulation, policy, or statute."  *Id.*  Indeed, in *Yost,* the court specifically refused to find that a college owed an independent duty to its students based on its dissemination of an anti-hazing policy.  3 N.E.3d at 518.  Accordingly, Plaintiff's reference to various University polices and publications as a source of duties owed by Notre Dame forecloses the possibility that Notre Dame assumed a duty of care based on its conduct. [12]

For these reasons, the Court must reject Plaintiff's assertion that Notre Dame owed her an independent duty of care, a duty to protect her from foreseeable harm in conducting the Title IX investigation, or a duty of privacy and confidentiality.[13]  Because Plaintiff has failed to allege any factual basis to support that Notre Dame owed her an independent duty, her negligence claim also fails.  *See*

---

[12] In an attempt to persuade the Court that Notre Dame's various publications and policies created duties that could support a negligence claim under Indiana law, Plaintiff also relies on a handful of irrelevant decisions that apply Minnesota and Tennessee law.  Two of the Minnesota cases cited by Plaintiff express skepticism about whether one could establish a duty of care in the course of a Title IX investigation.  *See Doe v. Univ. of St. Thomas,* 240 F. Supp. 3d 984 (D. Minn. 1977); *Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100 (D. Minn. 2017).  Another case cited by Plaintiff deals with the Minnesota common-law duty not to dismiss students arbitrarily, while the fourth case cites Tennessee law.  *See Abbariao v. Hamline Univ. Sch. of Law,* 258 N.W.2d 108 (Minn. 2017); *Doe v. Univ. of S.*, No. 4:09-cv-62, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011).  The Court should disregard these inapplicable cases.

[13] Plaintiff implicitly acknowledges the deficiency in her pleading of any cognizable duties owed by Notre Dame to Plaintiff with her request to engage in discovery to determine Notre Dame's responsibilities.  (Resp. at 24.)

*Decatur Ventures,* 373 F. Supp. 2d at 848 (identifying a duty owed by the defendant to the plaintiff as a necessary element of a negligence claim under Indiana law).

B.  *Plaintiff's Negligence Claim is Duplicative of the Breach of Contract Claim*

Plaintiff effectively concedes that her negligence claim may be a reiteration of the breach of contract claim.  (Resp. at 23.)  To the extent Plaintiff's negligence claim is premised on duties set forth in Notre Dame's own policies and procedures, it is actually a mislabeled breach of contract claim. "[A] contract claim disguised as a tort cannot survive under Indiana law."  *Fritzinger v. Angie's List,* No. 1:12-cv-01118-JMS-DML, 2013 WL 772864, at *3 (S.D. Ind. Feb. 28, 2013).  "A plaintiff who brings both a breach of contract and a tort claim must show both that the defendant committed the separate and independent tort and that the tort resulted in injury distinct from the injury of the alleged breach." *Id.* at *2.  Because the Complaint fails to distinguish injuries Plaintiff experienced from Notre Dame's alleged breach of contract from those she suffered as a result of Notre Dame's alleged negligence, this claim should be dismissed.

C.  *Plaintiff Effectively Concedes Dismissal of Her Invasion of Privacy Claim*

Plaintiff ignores Notre Dame's argument that she failed to state a claim for invasion of privacy. Her failure to respond operates as a waiver and is a sufficient reason for the Court to dismiss this claim.  *See Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) (affirming dismissal of complaint and holding that litigant abandoned claim when he failed to respond "to alleged deficiencies in a motion to dismiss[]").  Indeed, Plaintiff abandoned her claim for invasion of privacy because she cannot state a claim for that tort.  (Motion, at 22-23.)  Accordingly, this claim should be dismissed.

## **CONCLUSION**

For all the reasons stated above, Notre Dame respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated: October 23, 2017                    Respectfully submitted,


                                           /s/  Sandra L. Musumeci

                                           Sandra L. Musumeci
                                           Ryan P. Poscablo
                                           RILEY SAFER HOLMES & CANCILA LLP
                                           1330 Avenue of the Americas, 6th Floor
                                           New York, New York 10019
                                           Phone: 212-660-1000
                                           Fax: 212-660-1001
                                           Email: smusumeci@rshc-law.com
                                                   rposcablo@rshc-law.com

                                           Ronald S. Safer
                                           Joy L. Anderson
                                           Sarah E. Finch
                                           RILEY SAFER HOLMES & CANCILA LLP
                                           70 W. Madison Street, Suite 2900
                                           Chicago, Illinois 60602
                                           Phone: 312-471-8700
                                           Fax: 312-471-8701
                                           Email: rsafer@rshc-law.com
                                                   janderson@rshc-law.com
                                                   sfinch@rshc-law.com

                                           Matthew Kennison
                                           RILEY SAFER HOLMES & CANCILA LLP
                                           121 W. Washington St., Suite 402
                                           Ann Arbor, Michigan 48104
                                           (312) 471-8758
                                           Fax: 312-471-8701
                                           Email: mkennison@rshc-law.com

                                           *Attorneys for Defendant*
                                           *University of Notre Dame*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2017, I electronically filed the foregoing Reply Brief in the United States District Court for the Northern District of Indiana using the CM/ECF system which will send a notice of electronic filing to the following:

Peter J. Agostino
Stephanie L. Nemeth
Bradly P. Colborn
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601

/s/ Matthew Kennison

4843-2763-8610, v. 1

17