UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JANE DOE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17CV690-PPS |
| | ) | |
| UNIVERSITY OF NOTRE DAME DU LAC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Jane Doe was an undergraduate student attending Holy Cross College in South Bend, Indiana, and was a participant in the Gateway Program, designed to transition her from Holy Cross to enrollment at the college across the street, the University of Notre Dame. Her complaint alleges that she was sexually assaulted by a Notre Dame football player in his dorm room, after she escorted him home to ensure his safety because he was intoxicated. Jane Doe says she wanted to handle the assault "in privacy." [DE 1 at ¶10.] But the Notre Dame authorities ultimately found out about the alleged assault and opened a Title IX investigation. This lawsuit challenges Notre Dame's handling of the matter.

The complaint has three counts. Count I is a claim that Notre Dame's gender-based implementation of its harassment policy violates Title IX. In Count II, Jane Doe alleges that Notre Dame breached a contract with her by its failure to comply with its

own policies and procedures, and that Notre Dame also violated the implied covenant of good faith and fair dealing by handling the sexual assault case in an arbitrary and capricious manner. Finally, Count III is a tort claim that Notre Dame was negligent in "selecting, training, and supervising competent coaches, athletic directors, and impartial investigators, to investigate and decide her case and protect her privacy interests," and a claim that Notre Dame's handling of the sexual assault case involved an invasion of Jane Doe's privacy and a failure to protect Jane from foreseeable harm. [DE at ¶51.]

Notre Dame seeks dismissal of all counts of the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion is fully briefed and ripe for decision. I heard oral argument on the motion at a hearing held April 25, 2018.

### Motion to Dismiss Standard

In reviewing a motion under Rule 12(b)(6), I "'must accept as true all of the allegations contained in a complaint' that are not legal conclusions." *Toulon v. Continental Casualty* Company, 877 F.3d 725, 734 (7th Cir. 2017), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must be construed in the light most favorable to Jane Doe, and all possible inferences must be drawn in her favor. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 365-66 (7th Cir. 2018), quoting *Bell Atl. Corp. v.*

2

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility" does not require "probability," but "more than a sheer possibility that a defendant has acted unlawfully" is required to survive a challenge under Rule 12(b)(6). *Id*.

At oral argument on the motion, Jane Doe argued that her complaint was pled for filing in state court, and that after removal to federal court by Notre Dame, she should not be judged by federal pleading standards. The principal problem with this argument is that it was made for the first time at oral argument, rather than in Jane Doe's brief in opposition to the motion to dismiss. Second, like the federal courts, Indiana requires "notice pleading," and Indiana's pleading rule, Ind. Trial Rule 8, is largely akin to Fed.R.Civ.P. 8. *City of Clinton v. Goldner*, 885 N.E.2d 67, 74 (Ind.Ct.App. 2008), *Wee Scots, LLC v. Fleming*, 765 N.E.2d 668, 671 (Ind.Ct.App. 2002). Jane Doe did not explain any meaningful difference between the two forums' pleading requirements that would support her argument. Furthermore, if Jane Doe believed that Notre Dame's motion unfairly held her to federal pleading standards, and that she could readily replead her claims so as to satisfy them, she might have responded to the motion to dismiss with a request for leave to amend her complaint to do so. But she did not, and the belated argument will not preclude my consideration of Notre Dame's arguments.

## Count I – Title IX

3

I'll start with the federal claim colloquially called a "Title IX" claim. These claims refer to a portion of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, a federal law governing recipients of federal educational funding. In litigation stemming from Title IX's prohibition on "discrimination" (which includes sexual harassment) in educational programs or activities receiving federal funding, the Supreme Court has held that "a private damages action may lie against the school board in cases of student-on-student harassment...but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). Elaborating on this standard, the *Davis* court said that a school is "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. The parties are in agreement on these standards. So the question for me to answer is whether Jane Doe has sufficiently pleaded a claim that Notre Dame's response to the alleged harassment was "clearly unreasonable."

Notre Dame essentially argues that Jane Doe has pleaded herself out of court by alleging facts that demonstrate that the university's conduct was not "clearly unreasonable." Here are the facts as told to me in the complaint, and which I accept as true at this point. Notre Dame initiated an investigation into the attack on Jane when

the university learned of the allegation from another student. [DE 2 at ¶10.] At that time, there was a report of an assault on another woman by the same football player. [*Id*.] Notre Dame informed the alleged attacker that he was being investigated for an assault on Jane, although Jane was not participating in the proceedings. [DE 2 at ¶11.] Although Jane did not want an investigation by the university — because she did not want to go public concerning her assault and wanted to avoid contact with the perpetrator — it was certainly not unreasonable for Notre Dame to initiate an investigation into claims that the football player had assaulted two female students. To the contrary, it would have been unreasonable (and potentially actionable under Title IX) for Notre Dame to *fail* to open investigations into the "known circumstances" of the two reported incidents.

Notre Dame points out the contradictory nature of Jane's complaint — complaining that Notre Dame opened the investigation against her wishes, but also that Notre Dame later closed the investigation. On this latter point, the complaint says that "[a]fter violating her privacy rights, the University then 'addressed' her serious concerns about being on campus with her attacker by orchestrating the closing of the Title IX investigation so that the student athlete who attacked her, a football player, could transfer to another university with a clean record." [DE 2 at ¶1.] But the pleading identifies "facing her attacker on campus" as "Jane's paramount concern." [DE 2 at ¶12.] She alleges that Notre Dame "recommend[ed] Jane close the Title IX investigation," and that she "agreed to close it." [*Id*.] Jane is clearly dissatisfied with

the outcome that she sees as favorable to her attacker, but, by her own account, this outcome (a) ameliorated her "paramount concern," namely encountering the attacker on campus, and (b) resulted from her agreement.  No plausible claim of "deliberate indifference" or "clearly unreasonable" conduct by the university is supported by Jane's allegations concerning the closure of the investigation.

The Seventh Circuit has referred to Title IX's deliberate indifference standard as a "high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014).  And the Supreme Court has made clear that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648.  As the term "indifference" suggests, a Title IX deliberate indifference claim is ordinarily intended for *inaction* on the part of school authorities: "usually this claim is asserted by a victim against a school or university official who *failed* to protect him or her from harassment or otherwise address the alleged misconduct." *Marshall v. Ohio University*, No. 2:15-cv-775, 2015 WL 1179955, at *8 (S.D.Ohio  Mar. 13, 2015) (emphasis in original).

This case presents the unusual circumstance in which the alleged victim wanted the school, even after notice of the attack, to stand down and take no action, in deference to her wishes.  But the school has an obligation to the larger community to investigate the matter.

> [E]ven assuming, *arguendo*, that Tubbs did not authorize a proceeding, the university has an independent obligation to investigate allegations of sexual misconduct.  *See* OCR Letter (The duty to conduct a Title IX

6

> investigation is a "university's responsibility, regardless of whether a student has complained, asked the university to take action, or identified the harassment as a form of discrimination.").

*Tubbs v. Stony Brook University*, No. 15 Civ. 0517 (NSR), 2016 WL 8650463, at *7 n.6 (S.D.N.Y. Mar. 4, 2016)  Title IX does not support liability for a university's undertaking its investigation obligation simply because the alleged victim does not want an official investigation.

In *Hendrichsen v. Ball State Univ.*, 107 Fed.Appx. 680, 685 (7th Cir. 2004), the Court of Appeals affirmed summary judgment for the school against a student who complained that her identity had been revealed to the professor she charged with sexual harassment, that the school should have done more than issue a no-trespass letter to the professor, and that the professor should have been fired. The Seventh Circuit found that the university was not deliberately indifferent because promptly investigating, issuing the no-trespass letter and warning the professor not to contact or retaliate against the student could not be considered "clearly unreasonable" in light of the known circumstances. *Id*.

It is true that *Hendrichsen* was decided on a motion for summary judgment as opposed to a motion to dismiss. But the "known circumstances" — in other words, what were the facts as known to Notre Dame? — are fully set out in the fifteen page complaint filed in the case. And what we know from the complaint is that there were reports of two sexual assaults on fellow students by a Notre Dame football player, and Notre Dame took appropriate action to investigate the matter. That is, in my judgment,

7

a plainly reasonable response to a possible danger on campus. Jane Doe's Title IX claim is therefore subject to dismissal.

## Supplemental Jurisdiction

At this point in the analysis, I must switch gears. This case was removed from state court on the basis of the federal question jurisdiction supplied by the Title IX claim. [DE 1 at 2.] After determining that the Title IX claim in Count I is subject to dismissal, I have the option to decline to exercise supplemental jurisdiction over the state law claims in Counts II and III for breach of contract and negligence. Provisions of the supplemental jurisdiction statute, 28 U.S.C. §1367(c)(1) and (3), authorize the court to return the case to the Indiana court from which it was removed if the remaining claims raise "a novel or complex issue of state law," or the district court has "dismissed all claims over which it has original jurisdiction."

Both of these bases for declining supplemental jurisdiction apply here, given the dismissal of the Title IX claim and the uncertainty under Indiana law of issues of assumption of a duty and the viability of negligence claims parallel to a breach of contract or Title IX claim. The Seventh Circuit has suggested that declining supplemental jurisdiction is the best course in just such a case as this. In *Doe-2 v. McLean County Unit District No. 5 Bd. of Directors*, 593 F.3d 507 (7th Cir. 2010), the Court of Appeals questioned the district court's failure to invoke §1367(c) after it dismissed a Title IX claim:

> Ordinarily, when a district court dismisses the federal claim conferring original jurisdiction before trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. §1367(c)(3)...Here, following the dismissal of Doe-2's Title IX claim under Rule 12(b)(6), nothing indicates that the district court or the parties thought of dismissing Doe-2's state-law claims without prejudice for the Illinois courts to resolve. Given the relatively novel issues of Illinois tort law presented by Doe-2's case, it would have been appropriate to consider such a dismissal.

*Id*. at 513. *See also Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) ["On the contrary, the court might well have abused its discretion if it had retained jurisdiction over a strictly state-law claim in an area where important state policy goals may conflict."].

But the Seventh Circuit also teaches that "[g]enerally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). So, without addressing Notre Dame's arguments as to the state law claims, I will grant the motion to dismiss in part, with respect to the Title IX claim, and allow Jane Doe the opportunity to offer an amended complaint in which she attempts to replead the Title IX claim. If Jane Doe does not seek leave to file an amended complaint, or if she does but the Title IX claim is still deficient, I will decline to exercise supplemental jurisdiction and remand the case to state court.

I fully recognize that if I decline to exercise supplemental jurisdiction, and remand the state claims, Notre Dame could again attempt to remove the case on the basis of diversity jurisdiction, in view of the allegation in Jane's complaint that she now "resides in the state of Colorado." [DE 2 at ¶2.] But even if diversity of citizenship

9

exists, Notre Dame would be prevented from removing the case to federal court on that basis, if Jane objected to the removal. This is so because of the non-jurisdictional "forum defendant rule" found in 18 U.S.C. §1441(b)(2): "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *See Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013); *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 379-80 (7th Cir. 2000).

## Conclusion

Jane Doe's sole federal claim, the Title IX claim in Count I, fails to state a claim upon which relief can be granted. The case may be subject to remand after I decline to exercise supplemental jurisdiction over Jane's remaining claims, which are brought under state law. The Seventh Circuit nonetheless requires a second opportunity to plead her claims, and Jane Doe will be granted 30 days in which to file a motion for leave to file a first amended complaint in which she attempts to replead her Title IX claim. A copy of the proposed first amended complaint must be filed with the motion.

**ACCORDINGLY:**

Defendant University of Notre Dame's Motion to Dismiss [DE 12] is GRANTED IN PART with respect to Count I of the complaint, and is DENIED WITHOUT PREJUDICE with respect to Counts II and III of the complaint.

Plaintiff Jane Doe is granted 30 days in which to file a motion for leave to file a first amended complaint. A copy of the proposed first amended complaint must be filed with the motion.

**SO ORDERED.**

**ENTERED: May 11, 2018.**            /s/  Philip P. Simon
                                                           **United States District Judge**