**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-cv-00690-PPS-MGG |
| v. | ) | |
| | ) | |
| UNIVERSITY OF NOTRE DAME, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF NOTRE DAME'S**
**REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................. 1

**ARGUMENT** .................................................................................................................. 2

   **I.**   **Plaintiff has not set forth that Notre Dame showed deliberate indifference in handling her sexual assault complaint, as is required to sustain her Title IX claim.** ......... 2

   **II.**   **Plaintiff fails to state a claim for Breach of Contract.** ................................................. 9

     *A.*   *The Amended Complaint alleges no cognizable contract between Plaintiff and the University.*..................................................................................................................... 9

     *B.*   *Even if there was a contract, Plaintiff fails to explain how it was breached.* ................ 10

     *C.*   *Plaintiff has no damages caused by Notre Dame's supposed breach*............................ 11

   **III.**   **Plaintiff's Negligence claim fails as a matter of Indiana law.** ................................. 12

     *A.*   *Plaintiff's assumption of duty claim fails under Indiana law.* ...................................... 13

     B.   *Plaintiff's negligence claim duplicates the breach of contract claim.* ........................... 14

i

## TABLE OF AUTHORITIES

*Abbariao v. Hamline Univ. Sch. of Law,*
    258 N.W.2d 108 (Minn. 2017)……………………………………………..….13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ……………………………………………...…..9, 13

*Bissessur v. Ind. Univ. Bd. of Trs*.,
    581 F.3d 599 (7th Cir. 2009)……………………………………………12

*Butters v. James Madison University,*
    145 F. Supp. 3d 610 (W.D. Va. 2015)…………………………………………6

*Chang v. Purdue Univ.,*
    985 N.E.2d 35 (Ind. Ct. App. 2013)……………………………………………12

*Chivers v. Cent. Noble Cmty. Sch.,*
    423 F. Supp. 2d 835 (N.D. Ind. 2006)…………………………………………4

*C.S. v. Couch,*
    843 F. Supp. 2d 894 (N.D. Ind. 2011)……………………………………….…8

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.,*
    526 U.S. 629 (1999)……………………………………………………….….4

*Doe #1 v. Indiana Dep't of Child Servs*.,
    81 N.E.3d 199 (Ind. 2017)…………………………………………….…..13

*Doe v. Univ. of South,*
    No. 4:09-cv-62, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011)…………..………13

*Doe v. Univ. of St. Thomas,*
    240 F. Supp. 3d 984 (D. Minn. 1977)………………………………….……..13

*Fritzinger v. Angie's List*,
    2013WL 772864 (S.D. Ind. Feb. 28, 2013)…………………………………..…14

*Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*,
    315 F.3d 817 (7th Cir. 2003)…………………………………………….…..8

*Hendrichsen v. Ball State University,*
    107 F. App'x 680 (7th Cir. 2004)…………………………………………....7

*Hi-Tec Properties, LLC v. Murphy*,
    14 N.E.3d 767 (Ind. Ct. App. 2014)…………………………………………12

*Johnson v. Wal-Mart Stores, Inc*.,
    588 F.3d 439, 445 (7th Cir. 2009) ……………………………………….…..12

*Lowrey v. Texas A & M Univ. Sys*.,
    117 F.3d 242 (5th Cir. 1997) ……………………………………..,.…………………8

*McCollough v. Noblesville Sch.,*

63 N.E.3d 334, 345 (Ind. Ct. App. 2016)………………………………………………..13

*McGrath v. Dominican College of Blauvelt, New York,*
672 F. Supp. 2d 477 (S.D.N.Y. 2009)………………………………………………....6

*Monteiro v. Tempe Union High School District,*
158 F.3d 1022 (9th Cir. 1998)………………………………………………………....6

*Rex v. West Virginia School of Osteopathic Medicine,*
119 F. Supp. 3d 542 (S.D.W. Va. 2015)……………………………………………....6

*Rosenblum v. Travelbyus.com, Ltd.,*
299 F.3d 657 (7th Cir. 2002)…………………………………………………………9

*Royce v. Michael R. Needle, P.C.,*
No. 15 C 259, 2016 WL 3406402, at *6 (N.D. Ill. June 21, 2016)……………………..11

*Rubber Shop, Inc. v. Benicorp Ins. Co.,*
No. 3:05-CV-279-RM, 2006 WL 346327 (N.D. Ind. Feb. 13, 2006)……………………9

*Shank v. Carleton Coll.,*
232 F. Supp. 3d 1100 (D. Minn. 2017)………………………………………………13

*Shepard v. State Auto. Mut. Ins. Co.,*
463 F.3d 742 (7th Cir. 2006)…………………………………………………..……..12

*Swanson v. Citibank, N.A.,*
614 F.3d 400 (7th Cir. 2010)…………………………………………………………..9

*Twombly v. Bell Atlantic Corp. et al,*
550 U.S. 544 (2007) ………..…………………………………………………………8

*Vestal v. Heart of CarDon, LLC,*
No. 217CV00155JMSMJD, 2018 WL 3008638  (S.D. Ind. June 15, 2018)……………13

*Wojtas v. Capital Guardian Tr. Co.,*
477 F.3d 924 (7th Cir. 2007) ….………………………………………………………11

*Yost v. Wabash Coll.,*
3 N.E.3d 509 (Ind. 2014)………………………………………………………….…..14

*Zeno v. Pine Plains Central School District,*
702 F.3d 655 (2d Cir. 2012)…………………………………………………………6

# <u>INTRODUCTION</u>

Plaintiff's Response Brief in Opposition to the Motion to Dismiss the Amended Complaint ("Response") ignores the law and impermissibly attempts to recharacterize and augment the facts from what she actually pled in the Amended Complaint.  But even with resort to extrinsic evidence and conclusory allegations that go beyond what is alleged in the Amended Complaint, Plaintiff does not set forth, as a matter of law, that Notre Dame handled the complaint of her sexual assault in a manner that was clearly unreasonable, that it breached any contract with her with respect to its actions or omissions, or that it had any independent duty to her that would give rise to a negligence claim under Indiana law.  For all of these reasons, all three claims in Plaintiff's Amended Complaint – a federal claim under Title IX, and state law claims for breach of contract and negligence – should be dismissed with prejudice.

Far from being unreasonable, Notre Dame acted appropriately with respect to the serious allegations made concerning Plaintiff and her subsequent refusal to cooperate with any investigation.  When Notre Dame received a report that Plaintiff, a non-Notre Dame student, had been sexually assaulted by a Notre Dame student-athlete on its campus, Notre Dame staff members moved quickly to investigate.  Notre Dame went forward with a standard Title IX investigation in spite of Plaintiff's persistent unwillingness to cooperate, and ultimately the University identified and confronted Jack Roe, the person who allegedly attacked her.  When Plaintiff expressed concerns about her safety and potentially encountering Roe upon her return to campus as a Notre Dame student the following year, Notre Dame completed the investigation and agreed to discontinue the Title IX process, in accord with Plaintiff's clearly-demonstrated wishes.  Jack Roe thereafter transferred away from Notre Dame and was not on campus when Plaintiff matriculated at Notre Dame in the Fall of 2016.  These are the facts as Plaintiff has pled them in her Amended

Complaint, and they establish that Notre Dame's conduct in handling her complaint was not clearly unreasonable in light of the known circumstances.

Instead of alleging facts to support her claims, Plaintiff relies on inflammatory and factually unmoored conclusions to theorize that Notre Dame allowed Jack Roe to transfer in order to protect its reputation. Not only are there are no non-conclusory facts alleged to support that theory, but the facts that Plaintiff does plead make that unsupported conclusion implausible. Indeed, by Plaintiff's own admission, the University proactively identified and confronted one of its student athletes about an alleged sexual assault based on a report made by a third-party, despite the alleged victim's refusal to participate in the Title IX investigation. Such conduct is not consistent with trying to conceal an allegation or discouraging students from reporting sexual misconduct on campus.

Notre Dame's conduct in responding to the report of Plaintiff's assault cannot be considered clearly unreasonable given the circumstances and limited information available to the University, and it cannot therefore be liable under Title IX for deliberate indifference. Nor can Notre Dame be liable in contract or tort, as Plaintiff's Amended Complaint fails to state any cognizable claim under either of those theories. Plaintiff has now had two opportunities to state actionable claims and has failed to so. This Court should therefore dismiss the entirety of the Amended Complaint with prejudice.

## ARGUMENT

I.     **Plaintiff has not set forth that Notre Dame showed deliberate indifference in handling her sexual assault complaint, as is required to sustain her Title IX claim.**

In 1999, when considering the governing standard for a private right of action under Title IX, the U.S. Supreme Court made clear that legally and factually deficient Title IX claims should

be dismissed at the pleading stage. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649 (1999) ("In an appropriate case, there is no reason why courts, on a motion to dismiss, . . . could not identify a response as not 'clearly unreasonable' as a matter of law."). "As long as the school's response is not 'clearly unreasonable,'" this Court has held, "it cannot have acted with the requisite deliberate indifference to incur Title IX liability." *Chivers v. Cent. Noble Cmty. Sch.*, 423 F. Supp. 2d 835, 847 (N.D. Ind. 2006) (citing *Davis,* 526 U.S. at 648-49). Plaintiff's Amended Complaint, and now her Response, fail to demonstrate that Notre Dame responded to the report of her sexual assault in a clearly unreasonable manner.

Plaintiff repeats her unsupported claim that the University "misused its Title IX process to intimidate and pressure a victim to drop a complaint against a football player to allow him to transfer away from the school."[1] (DE 33 at 5.)  This theory fails for several reasons.  First, neither Plaintiff's Amended Complaint nor her Response provides any facts supporting the assertion that Notre Dame "misused" the Title IX process.  On the contrary, the facts as alleged by Plaintiff demonstrate that Notre Dame acted swiftly and appropriately to investigate a report of a sexual assault by one of its student-athletes, and carried out that Title IX investigation in the face of Plaintiff's steadfast unwillingness to cooperate.[2]

---

[1] While Plaintiff also initially asserts (as she did in her Response to Notre Dame's Motion to Dismiss the original Complaint) that Notre Dame was deliberately indifferent "to the threat" of Plaintiff's sexual assault, she thereafter abandons this "pre-assault" theory of liability entirely.  Not only is it not pled in the Amended Complaint, but Plaintiff's Response offers no analysis, provides no factual support, and cites no caselaw to support such a theory.

[2] While not relevant for the present motion, should this case proceed to discovery, the facts will ultimately show that not only did Notre Dame investigate, but it met, spoke on the phone, and emailed with Plaintiff and her father numerous times, put a "no contact" order in place between Plaintiff and Jack Roe, assigned Plaintiff a Title IX Resource Coordinator, hired an outside investigator to conduct the investigation, interviewed witnesses, and completed the Title IX investigation despite Plaintiff's refusal even to provide a statement to the investigator.

Second, Plaintiff's assertion that she was "intimidate[d] and pressure[d]" by Notre Dame finds no support in the Amended Complaint. Indeed, Plaintiff's own allegations tell a very different story. Plaintiff did not initiate contact with the Title IX office or initiate the subsequent investigation. Moreover, Plaintiff admits that the Title IX investigation took place without her participation at all; another student reported her alleged assault, Notre Dame initiated and conducted the investigation, and Notre Dame proactively identified and confronted the respondent. (DE 29 at ¶¶11-12, 20.) Further, rather than alleging facts demonstrating that Notre Dame "pressured" or "intimidated" Plaintiff, the Amended Complaint sets forth that Notre Dame did not move forward with additional proceedings after the investigation because Plaintiff said that was what she wanted. (*Id*. at ¶¶1,18.)

Third, and perhaps most telling, Plaintiff offers no support for her theory that the Title IX process ended because Notre Dame's "chief goal [was] preserving its own reputation." (DE 33 at 8.) Despite being given a second opportunity to plead facts to support this theory, Plaintiff again offers none. Indeed, the facts that are alleged in the Amended Complaint render implausible Plaintiff's theory that Notre Dame was simply acting to preserve its reputation. As Plaintiff herself alleges, Notre Dame, not Plaintiff, initiated the Title IX investigation into the alleged sexual misconduct on its campus. And at the conclusion of that investigation – one in which Plaintiff never alleges she was a willing participant – Notre Dame declined to pursue any further Title IX proceedings, in accord with Plaintiff's request. (DE 29 at ¶1, 18.)

Rather than respond to the merits of these arguments, Plaintiff attempts to analogize her factually unsupported Title IX claim to several inapt cases. But Plaintiff's cited authority stands in stark contrast to this case. For example, *Butters v. James Madison University*, 145 F. Supp. 3d 610, 619 (W.D. Va. 2015), a case Plaintiff believes is "most on point" (DE 33 at 7), has little

4

applicability here.   In denying a motion to dismiss, the district court in *Butters* focused on the university's failure "to conduct *any* investigation or take *any* action after learning about the assault and the existence and continued dissemination of the video." *Butters*, 145 F. Supp. 3d at 619, 621 n.7 ("JMU's failure to take *any* steps to halt the dissemination of the video or to otherwise protect Butters from further harassment, particularly where there was a recording that, at least to some degree, supported her version of events, renders dismissal inappropriate.") (emphasis added).   That is not what Plaintiff alleges to have occurred at Notre Dame.   In contrast to *Butters*, here there was no extrinsic evidence that "support[ed] her version of events" of Jack Roe assaulting her, and as Plaintiff readily admits, Notre Dame did immediately take action to investigate the report of her sexual assault, notwithstanding Plaintiff's refusal to participate.   (DE 29 at ¶¶11-12, 20.) Moreover, after Plaintiff expressed concerns about being on campus with Jack Roe and requested that no further action be taken, the University acquiesced by completing its investigation and not proceeding to a Title IX hearing, thereby removing impediments to Roe's transfer and providing some assurance that he would not be on campus when Plaintiff began her Fall classes.   (*Id*. at ¶¶1, 17-18.)   Plaintiff's attempt to analogize her case to one where a school "merely investigat[ed] and [did] absolutely nothing more," (DE 33 at 7), is belied by the facts alleged in Plaintiff's own Amended Complaint.   And more to the point, the facts alleged in the Amended Complaint establish that Notre Dame's conduct in handling her complaint was not clearly unreasonable as a matter of law.

The other cases cited by Plaintiff in support of sustaining her Title IX claim against Notre Dame are similarly inapposite.   In *McGrath v. Dominican College of Blauvelt, New York*, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009), the court observed that the defendants "refused to take any action," "that nothing was ever done about the problem," and that "the College failed to engage

[Plaintiff] in any meaningful discussions or take steps to ameliorate the discrimination and that [Plaintiff's daughter] could not safely return to school in the fall, where two of her three attackers were still enrolled." *Zeno v. Pine Plains Central School District* is even more inapt. 702 F.3d 655 (2d Cir. 2012). There, the Second Circuit affirmed the denial of a Rule 50 motion, observing that the school district's actions "did not deter others from engaging [plaintiff] in serious and offensive racial conduct," and correctly concluded that "[r]esponses that are not reasonably calculated to end harassment are inadequate." *Id.* at 669. Finally, in *Monteiro v. Tempe Union High School District*, 158 F.3d 1022, 1034 (9th Cir. 1998), the Ninth Circuit observed "that Black students and their parents complained but were rebuffed, and that nothing was ever done about the problem."[3]

None of the factual circumstances present in these three cases above have been alleged by Plaintiff. The facts as pled in the Amended Complaint do not support a conclusion that "nothing was ever done," that Notre Dame "refused to take any action," or that any harassing conduct continued after the report of her sexual assault was made. Notre Dame initiated an investigation, identified and confronted the person who allegedly attacked her, and then, per Plaintiff's request, lifted obstructions preventing Jack Roe's transfer from campus. Roe's subsequent transfer provided Plaintiff with a sense of security when she began her classes at Notre Dame the following fall. This cannot, as a matter of law, be considered clearly unreasonable in light of the known circumstances.

---

[3] Similarly, Plaintiff's likening of this case to *Rex v. West Virginia School of Osteopathic Medicine*, 119 F. Supp. 3d 542 (S.D.W. Va. 2015), is vastly overstated. In *Rex*, the plaintiff alleged the school "had no procedures in place at the time of her attack, leaving her to search out support from unprepared [school] officials," that the school "deliberately deprived her of both internal and external forms of support," and that "after ignoring or even encouraging continued harassment, informed her that she could not be protected on campus and facilitated her withdrawal." *Id.* at 551. The Amended Complaint here is devoid of any factual allegations of this nature.

The instant case is more analogous to *Hendrichsen v. Ball State University*, where the Seventh Circuit affirmed the district court's dismissal.  107 F. App'x 680 (7th Cir. 2004).  There, the Seventh Circuit held that the plaintiff did not show that Ball State was deliberately indifferent in its response to the plaintiff's complaint of sexual harassment, despite the plaintiff's allegations that:   1) the Equal Opportunity and Affirmative Action Office (EOAA) staff disclosed the plaintiff's identity to her alleged harasser; 2) EOAA staff did not interview certain witnesses; and 3) the University did not do enough to discipline the harasser.  *Id.* at 685.  The court in *Hendrichsen* held that while the plaintiff "may wish that Ball State had done more," she failed to explain "why what the university *did* do – promptly investigating the situation as soon as she told them about it, issuing [the harasser] a no-trespass letter, and warning him not to contact or retaliate against [the plaintiff] – could be considered 'clearly unreasonable' in light of the known circumstances."  *Id.* The Seventh Circuit observed this was especially true in light of the fact that "by and large, the situation remedied itself as soon as Ball State became involved." *Id.*[4]

Plaintiff cannot salvage her Title IX deliberate indifference claim by citing Notre Dame's alleged failure to investigate rumors of *other* alleged sexual assaults by Jack Roe on different unidentified complainants and compiling unsupported allegations about how Notre Dame addressed a handful of completely unrelated Title IX cases years ago.  Indeed, Plaintiff's deliberate indifference claim must necessarily focus on whether Notre Dame's actions with respect to the sexual assault *on her* was clearly unreasonable, and Plaintiff lacks standing to bring a Title IX

---

[4] *See also C.S. v. Couch*, 843 F. Supp. 2d 894, 910 (N.D. Ind. 2011) ("When, after each reported or observed instance of harassment, the school disciplined the perpetrator or took steps to prevent future inappropriate conduct, the school's response has been found not to be 'clearly unreasonable.'"); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 825 (7th Cir. 2003) (finding "it was not clearly unreasonable as a matter of law initially to assign an instructor to oversee a communal recess and lunch period instead of immediately rescheduling the lunch and recess period for a whole kindergarten class.").

claim addressing how Notre Dame responded to potential sexual assault allegations involving other people. *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 251 (5th Cir. 1997) (holding plaintiff does "not have standing to assert the rights of third persons under title IX"). The unsupported and inflammatory allegations included in the Amended Complaint about other Title IX cases and other potential sexual assault victims have no legal bearing on whether Notre Dame handled Plaintiff's case reasonably, and accordingly, they should be disregarded.[5]

Despite the legal and factual shortcomings of her amended Title IX claim, Plaintiff nonetheless maintains that this Court should allow her Amended Complaint to proceed, because "[c]ourts have allowed these claims to proceed on the theory that a school mishandled its investigation with a chief goal of preserving its own reputation." (DE 33 at 8.) But Plaintiff offers no facts and only conjecture in support of this implausible theory. The Supreme Court has made it clear that this type of conclusory allegation is not entitled to the presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009); *Twombly v. Bell Atlantic Corp. et al,* 550 U.S. 544, 555 (2007). Even if Plaintiff's allegations raised the mere possibility of misconduct, it would still be insufficient to state a claim under *Iqbal* and *Twombly*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Plaintiff "must do better than put[] a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Plaintiff's Title IX claim is legally insufficient and should be dismissed.

---

[5] Indeed, facts will show that Notre Dame did inquire further about a rumor that Jack Roe had assaulted someone else, but no useful information could be obtained through these efforts.

**II.    Plaintiff fails to state a claim for Breach of Contract.**

>   *A.   The Amended Complaint alleges no cognizable contract between Plaintiff and the University.*

Plaintiff may not sustain a breach of contract action without first identifying the existence of a valid "contract" that was breached.  Plaintiff again admits that she was Holy Cross student during the relevant time period, (DE 33 at 10), but attempts to brush aside this critical fact, arguing that her status as a member of the Holy Cross Gateway Program at Notre Dame – a transitional program that allegedly offers only the conditional promise of later acceptance to Notre Dame if certain academic requirements are met – created the contract.  She is mistaken.

Plaintiff relies upon several extraneous materials appended to her Response to argue the existence of a contract between herself and Notre Dame.  As an initial matter, attaching extrinsic information to the Response is procedurally improper and should be disregarded by the Court.  *See Rosenblum v. Travelbyus.com, Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint."); *Rubber Shop, Inc. v. Benicorp Ins. Co.,* No. 3:05-CV-279-RM, 2006 WL 346327, at *1 (N.D. Ind. Feb. 13, 2006) (granting defendant's motion to strike plaintiff's submission of documents in response to defendant's motion to dismiss and recognizing that "documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss") (internal citations omitted).

Even considering these documents, however – none of which was referenced in the Amended Complaint – they do not demonstrate the existence of a valid contract between Plaintiff and Notre Dame.  A review of the Gateway Program FAQ (DE 33-3), for instance, makes explicit that Holy Cross Gateway Students are *not* Notre Dame students.  For example, it states that only after "[c]ompleting the academic requirements and being in good standing at both institutions [will

a Gateway student be permitted] to move on as a full-time Notre Dame student," that all Gateway students live on Holy Cross's campus, not Notre Dame's, and that when asked where Gateway students attend school, "[t]he preferable answer would be the Holy Cross College-University of Notre Dame Gateway Program, but if you wish simply to say Holy Cross College, that is up to you." *Id*.

Plaintiff has failed to allege she was a Notre Dame student at all during the relevant time period, and, in fact, she readily admits she was not. Accordingly, given Plaintiff's failure to identify the existence of a valid contract with Notre Dame, explicit or implied, in her Amended Complaint, her breach of contract claim should be dismissed.

   B. *Even if there was a contract, Plaintiff fails to allege specifically how it was breached.*

Plaintiff's Response does nothing to articulate or clarify the breach allegedly committed by Notre Dame. Rather, Plaintiff merely offers the blanket assertion that her Amended Complaint "has made it clear enough." (DE 33 at 13.) But Plaintiff has offered no factual allegations to support her amorphous claim that Notre Dame breached any implied contract by "fail[ing] to investigate in the fashion it promised" or by "abus[ing] its own Title IX process to protect its reputation." (*Id*.) Moreover, as with the Title IX claim, not only does the breach of contract claim lack factual support in the Amended Complaint, but some of the facts that she does allege in the Amended Complaint contradict her breach of contract claim, while other allegations make that claim significantly less plausible. Plaintiff cannot credibly allege, for example, that Notre Dame "failed to investigate as promised" or that it "actively discouraged her in the Title IX process" when she simultaneously alleges that Notre Dame initiated and conducted a Title IX investigation in spite of Plaintiff's unwillingness to cooperate. (DE 29 at ¶¶11-12, 20.) Nor can she plausibly allege that Notre Dame "pressured her to make the issue go away quietly to save its own

reputation" when it was Notre Dame, not Plaintiff, that initiated the Title IX process in the first place.[6]  *Id.*

Plaintiff also makes the conclusory statement that "[a]ll of this is more than sufficient to constitute allegations of breach, and arbitrary and capricious violations." (DE 33 at 14.)  Again, Plaintiff offers no factual allegations supporting a claim that Notre Dame acted in an arbitrary or capricious manner.  *See Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 602-04 (7th Cir. 2009) (affirming dismissal of claim for breach of implied contract when plaintiff failed to point to any specific promise university made and complaint asserted a conclusory allegation that the university's actions were arbitrary, capricious, and undertaken in bad faith).[7]  A breach of contract claim against a university requires a plaintiff to allege how the supposed breach was in bad faith, arbitrary, or capricious.  *Chang v. Purdue Univ.*, 985 N.E.2d 35, 46 (Ind. Ct. App. 2013).  Plaintiff has failed to properly allege that here, and as a result, her breach of contract claim should be dismissed.

### C.  Plaintiff has alleged no damages caused by Notre Dame's supposed breach

Plaintiff now suggests that she should be relieved of her "burden to plead and prove damages."  *Shepard v. State Auto. Mut. Ins. Co.,* 463 F.3d 742, 745 (7th Cir. 2006) (applying Indiana law) (internal citations omitted).  Plaintiff argues instead that her alleged damages can be ascertained from "inferences that can be drawn from the Amended Complaint." (DE 33 at 14.)

---

[6] Indeed, the facts would show that Notre Dame was not provided the name of the respondent, but instead just that he was a student athlete.  Notre Dame took it upon itself to investigate and ascertain the respondent's identity.

[7] Plaintiff does not address at all Notre Dame's motion to dismiss argument that the Amended Complaint fails to allege any bad faith with respect to Notre Dame's supposed breach.  Accordingly, Plaintiff should be deemed to have waived this point.  *See Wojtas v. Capital Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("failure to offer any opposition to [a particular] argument constituted a waiver"); *Royce v. Michael R. Needle, P.C.*, No. 15 C 259, 2016 WL 3406402, at *6 (N.D. Ill. June 21, 2016) ("failure to address an argument raised by one's opponent constitutes a waiver").

Plaintiff must plead facts from which the Court could reasonably link the damages that Plaintiff alleges to Notre Dame's conduct.  The Amended Complaint's allegations regarding her damages, however, are vague and suggest no direct connection between Notre Dame's actions and Plaintiff's supposed damages.  And her Response offers no clarity of how the facts alleged in her Amended Complaint support her claim for damages caused by an alleged breach by Notre Dame; instead she merely recites the conclusory allegations from her Amended Complaint and attempts to add a new spin by alleging that, for instance, Notre Dame's institutional emphasis on Catholic values intensified her suffering.  (DE 33 at 15.)  But such allegations do not establish any link between a *breach* by Notre Dame and any harm that Plaintiff allegedly endured.  The lack of damages attributable to breaching conduct by Notre Dame is yet another reason why Plaintiff's breach of contract claim should be dismissed.  *See*, *e.g.*, *Hi-Tec Properties, LLC v. Murphy*, 14 N.E.3d 767, 776 (Ind. Ct. App. 2014) (holding the damages claimed for a breach of contract must be the natural, foreseeable, and proximate consequence of the breach); *see also Johnson v. Wal-Mart Stores, Inc.,* 588 F.3d 439, 445 (7th Cir. 2009) ("Courts remain entirely free to dismiss a claim supported by prima facie evidence where the pleadings do not permit a reasonable inference of proximate cause.").

### III.    Plaintiff's Negligence claim fails as a matter of Indiana law.

Plaintiff's negligence claim should be dismissed because Notre Dame owed no independent duties to Plaintiff and, critically, Indiana does not recognize the assumption of duty doctrine in circumstances such as those presented here, where Plaintiff seeks damages for non-physical injuries.  Additionally, any duties that are alleged to have originated in implied contracts would be, by definition, duplicative of the breach of contract claim and therefore should be dismissed.  In short, there is simply no scenario in which Plaintiff's negligence claim can survive. The negligence claim therefore must be dismissed.

A. *Plaintiff's assumption of duty claim fails under Indiana law.*

Plaintiff does not meaningfully contest Notre Dame's argument that under Indiana law, there can be no assumption of a duty where there is not a threat of increasing the risk of physical harm. *See Doe #1 v. Indiana Dep't of Child Servs.*, 81 N.E.3d 199, 205 (Ind. 2017) (citing Restatement (Third) of Torts section 42). Plaintiff merely states "it is at least possible" that Notre Dame "assumed certain duties for confidentiality and counseling towards the Plaintiff," and that the prevailing Indiana authorities cited by Notre Dame in its Memorandum in Support of the Motion to Dismiss "are not factually or legally relevant to the argument before the court."[8] (DE 33 at 17-18.) But Plaintiff is wrong, and the law in Indiana is clear: there can be no assumption of duty in cases dealing with non-physical harm. *See, e.g., McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 345 (Ind. Ct. App. 2016) ("We decline to extend the assumption of duty doctrine to situations involving non-physical harm . . ."); *Vestal v. Heart of CarDon, LLC*, No. 217CV00155JMSMJD, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018) (the assumption doctrine in Indiana does not apply "to situations involving non-physical harm."). Plaintiff fails to explain how, why, when, or to what extent anything Notre Dame did (or did not do) created the risk of physical harm to her. For this reason, her negligence claim should be dismissed with prejudice.[9]

---

[8] Moreover, Plaintiff cannot proceed with a facially deficient negligence claim merely based on a speculative "possibility" that discovery could uncover some unarticulated duty that Notre Dame took on, unbeknownst to Plaintiff and outside of a contractual context. *See* DE 33 at 17-18; *Iqbal*, 556 U.S. at 678.
[9] Plaintiff's argument that Notre Dame's various publications and policies created duties that could support a negligence claim under Indiana law is foreclosed by *Yost v. Wabash Coll.,* 3 N.E.3d 509, 515, 518 (Ind. 2014), where the Indiana Supreme Court specifically refused to find that a college owed an independent duty to its students based on its dissemination of an anti-hazing policy. Plaintiff also relies on a handful of irrelevant decisions that apply Minnesota and Tennessee law. Two of the Minnesota cases cited by Plaintiff express skepticism about whether one could establish a duty of care in the course of a Title IX investigation. *See Doe v. Univ. of St. Thomas,* 240 F. Supp. 3d 984 (D. Minn. 1977); *Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100 (D. Minn. 2017). Another case cited by Plaintiff deals with the Minnesota common-law duty not to dismiss students arbitrarily, while the fourth case cites Tennessee law. *See Abbariao v. Hamline Univ. Sch. of Law,* 258 N.W.2d 108 (Minn. 1977); *Doe v. Univ. of South,* No. 4:09-cv-62, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011). The Court should disregard these inapplicable cases.

13

*B.  Plaintiff's negligence claim duplicates the breach of contract claim.*

Plaintiff effectively concedes that her negligence claim may be a reiteration of the breach of contract claim.  (DE 33 at 16 ("it may be that such claims could be subsumed under the implied contract claims").)  "[A] contract claim disguised as a tort cannot survive under Indiana law." *Fritzinger v. Angie's List,* No. 1:12-cv-01118-JMS-DML, 2013 WL 772864, at *3 (S.D. Ind. Feb. 28, 2013).  "A plaintiff who brings both a breach of contract and a tort claim must show both that the defendant committed the separate and independent tort and that the tort resulted in injury distinct from the injury of the alleged breach."  *Id.* at *2.  The Amended Complaint fails to distinguish between the duties owed and damages allegedly sustained in the breach of contract claim versus the negligence claims.  The negligence claim should therefore be dismissed.

## <u>CONCLUSION</u>

For all the reasons stated above, Notre Dame respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety and with prejudice.

Dated: August 13, 2018            Respectfully submitted,

           /s/ *Joy L. Anderson*

           Sandra L. Musumeci
           Ryan P. Poscablo
           RILEY SAFER HOLMES & CANCILA LLP
           1330 Avenue of the Americas, 6th Floor
           New York, New York 10019
           Phone: 212-660-1000
           Fax: 212-660-1001
           Email: smusumeci@rshc-law.com
                   rposcablo@rshc-law.com

           Ronald S. Safer
           Joy L. Anderson
           Sarah E. Finch
           RILEY SAFER HOLMES & CANCILA LLP
           70 W. Madison Street, Suite 2900
           Chicago, Illinois 60602
           Phone: 312-471-8700
           Fax: 312-471-8701
           Email: rsafer@rshc-law.com
                   janderson@rshc-law.com
                   sfinch@rshc-law.com

           Matthew Kennison
           RILEY SAFER HOLMES & CANCILA LLP
           121 W. Washington St., Suite 402
           Ann Arbor, Michigan 48104
           (312) 471-8758
           Fax: 312-471-8701
           Email: mkennison@rshc-law.com

           *Attorneys for Defendant*
           *University of Notre Dame*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2018, I electronically filed the foregoing Reply Brief in the United States District Court for the Northern District of Indiana using the CM/ECF system which will send a notice of electronic filing to the following:

Peter J. Agostino
Stephanie L. Nemeth
Bradley P. Colborn
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601

/s/  *Joy L. Anderson*

4810-8926-9103, v. 4