UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17CV690-PPS |
| | ) | |
| UNIVERSITY OF NOTRE DAME DU LAC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

An earlier motion to dismiss Jane Doe's complaint against Notre Dame concerning its handling of her sexual assault allegation was granted in part, with respect to Jane's Title IX claim, but denied without prejudice as to her breach of contract and tort claims. [DE 24 at 10.] Jane was granted leave to file a first amended complaint, and the case is before me now on Notre Dame's new motion to dismiss directed to it. [DE 30.] The earlier opinion sets out the standards applicable to a motion to dismiss. [DE 24 at 2-3.] I will not repeat them all here, but merely note that to survive a motion to dismiss, Jane's pleading must allege enough facts to allow me to draw a reasonable inference that Notre Dame is liable on the legal theories Jane has identified. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**Title IX Claim**

Under Title IX, "a private damages action may lie against the school board in cases of student-on-student harassment...but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," and

"only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). A school is "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. at 648. This sets a high bar for a Title IX plaintiff to surmount.

The last go round, I concluded that Jane's Title IX allegations failed to state a claim because they did not plausibly support a conclusion that the university was deliberately indifferent to Jane. Nor were there allegations in the complaint sufficient to conclude that Notre Dame engaged in clearly unreasonable conduct in how it handled Jane's claim. On the contrary, the complaint itself established that Notre Dame promptly opened an investigation after it learned from another student of Jane's claim that she'd been attacked and sexually assaulted by a Notre Dame football player. After investigating the matter, Notre Dame recommended that Jane agree to close the investigation because doing so would facilitate her attacker's transfer to another school and this action would serve to address Jane's paramount concern of not seeing the attacker on campus. [DE 24 at 5.]

The first amended complaint repeats these allegations. [DE 29 at ¶¶1, 11, 17, 18.] Again this time, Jane alleges that Notre Dame violated Title IX by a "discriminatory, gender-biased implementation of its Policy on Sexual and Discriminatory Harassment...

2

and then by dismissing investigation of her case and facilitating her male attacker's transfer to another school." [DE 29 at ¶37; *see also* DE 2 at ¶41.] As noted, I have previously determined that, under the circumstances of this case, the agreed-to dismissal of the investigation does not state a Title IX claim. Additionally, the motive Jane ascribes to the university's conduct does not impact that result.

So what is new about Jane's amended Title IX claim? Not a whole lot. In her original complaint, Jane acknowledged that she "agreed to close" the Title IX investigation. [DE 2 at ¶12.] Avoiding that plain language, the first amended complaint amplifies its allegations that Notre Dame recommended that Jane agree to close the investigation, explaining to her that doing so would address Jane's fears of her attacker because he would be gone from the campus when she returned in the fall of 2016. [DE 29 at ¶¶17-19.] Amplified or not, these allegations boil down to the same facts and yield the same conclusion.

Jane acknowledges that "she expressed safety concerns about being on campus with her attacker" and was "frightened," but says she "sought to protect herself through the Title IX process." [DE 29 at ¶1.] But Jane's pleading (and her response to the motion to dismiss) do not contend that she actively participated in the Title IX investigation about the assault, which was opened based on a report by another student, without a statement from Jane. Recall that the assault took place in January 2016 and Jane did not report it to Notre Dame at that time. *Id*. at ¶ 9. It was only when she shared details of the assault with another student in April 2016 that the university

3

first become aware of the allegation. *Id.* at ¶ 11. And Notre Dame's source was the other student, not Jane. *Id.* The first amended complaint alleges that, after investigating the matter, at the end of the school year in June of 2016, the university "recommended to a frightened Jane Doe that if the formal investigation went away, her attacker would not be on campus in the Fall of 2016 and that she would be able to be safe," which "made it clear to Jane Doe that her only real option for her safety was to not move forward with the formal process." [*Id.* at ¶18.] There is no question that Jane's circumstances put her in a difficult position in which she had to weigh her safety concerns against the pursuit of a Title IX investigation.[1] But what Jane alleges Notre Dame did in counseling her pragmatically about the ramifications of the Title IX investigation was not "clearly unreasonable in light of known circumstances."

The known circumstances were that Jane was understandably terrified of facing her attacker on campus and that he was seeking to transfer to another school, a move which would be facilitated by closing the investigation. In those circumstances, it was not "clearly unreasonable" for Notre Dame to recommend a course of action that would (and did) succeed in removing the alleged attacker from campus. "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. What Jane challenges is not even a "disciplinary decision," but advice rendered to her in the course of a disciplinary investigation.

---

[1] Of course, a criminal investigation (an option not referenced in the record) would presumably not be impacted by Jack Roe's transfer to another school.

Jane's frustration that she faced a Hobson's choice because pressing the Title IX investigation would prolong her exposure to Jack Roe on campus does not support a claim against Notre Dame under Title IX standards. Jane's amended pleading does not meet the "high bar for plaintiffs seeking to hold schools and school officials liable for student-on-student harassment." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014).

Jane's response to the motion to dismiss contends that Notre Dame engaged in "an orchestrated process that discouraged a frightened victim, and ultimately allowed the matter to be quietly closed so that a football player could transfer," allegations which I find don't support a viable Title IX claim. [DE 33 at 2.] What's more, Jane's citation to Title IX cases that were allowed to proceed on allegations of minimal investigation does not require a different result, as the facts of those cases make them readily distinguishable from this case. [DE 33 at 6-7.] The case Jane cites as "most on point" involved a university's refusal to investigate a sexual assault absent a formal complaint by the victim and an allegation that the school explicitly discouraged such a filing. *Butters v. James Madison University*, 145 F.Supp.3d 610, 619-20 (W.D.Va. 2015). This fact pattern is similar to the present one in that both victims wanted a Title IX investigation to proceed without their own participation, but dissimilar in the most significant respect -- here Notre Dame initiated an investigation without a formal complaint by Jane and sought, rather than discouraged, her participation in the investigation.

Jane doesn't defend against dismissal with any argument about her broader policy-based allegations other than with a cursory assertion that "allegations of foot-dragging and the use of superficial Title IX investigations to avoid embarrassment or damage to a school's reputation have been allowed to proceed under Title IX, " citing *Rex v. West Virginia School of Osteopathic Medicine*, 119 F.Supp.3d 542 (S.D.W.Va. 2015). Jane's reliance on *Rex* misses the mark. In that case, the district court denied a motion to dismiss a Title IX claim, highlighting a number of allegations not present in this case, including that the school lacked a formal Title IX process, that Rex was "harassed by her attacker, other students, and WVSOM faculty and staff as she pursued her claim," that WVSOM "deliberately deprived her of both internal and external forms of support," and that the school "after ignoring or even encouraging continued harassment, informed her that she could not be protected on campus and facilitated her withdrawal." *Id.* at 551. All these egregious allegations, singly and in combination, render *Rex* entirely distinguishable from this case.

Another change to Jane's Title IX pleading involves her general allegation of a discriminatory gender-based implementation of Notre Dame's harassment policy. Jane alleges this took the form of the university's "fail[ure] to address a history and culture of discouragement of female victims of sexual assault, particularly through superficial use of its investigation process in situations involving allegations against male athletes."

[*Id.* at ¶42.][2] Jane contends that Notre Dame's creation and fostering of this culture constituted deliberate indifference to her and other similarly-situated female students. [*Id.* at ¶44.]

The problem is that Jane's factual allegations fail to connect the dots. For example, there are no allegations that any such culture impacted *Jane's* Title IX process. Nor does Jane say that she was aware of the culture that she alleges exists at Notre Dame or that it had any impact on her failure to initiate the Title IX investigation, her reticence to participate in it, or ultimately her decision to close it. Instead, Jane expressly alleges that her reluctance to proceed was "due to fear of getting hurt by Jack Roe." [DE 29 at ¶20.] In sum, Jane's allegations about a Notre Dame culture of discouragement of female victims of male athletes do not reflect any impact on Jane or on the university's handling of the Title IX investigation about her, and so do not state a claim under Title IX's deliberate indifference standard.

For all these reasons, the motion to dismiss will be granted with prejudice as to the Title IX claim in Count I of Jane Doe's first amended complaint.

**State Law Claims**

The remaining question is what to do about the two state law claims for breach of contract and negligence. Recall that this case is before the court based on a removal of the original complaint from state court by Notre Dame. The basis of the removal was

---

[2] I note that the first amended complaint contains no intervening paragraphs between ¶37 and ¶42. I cite the paragraphs as Jane has labeled them.

federal question jurisdiction arising from the Title IX claim, not diversity of citizenship. [DE 1 at 2] As explained in my May 11, 2018 opinion on the previous motion to dismiss, I declined to exercise supplemental jurisdiction over the state law claims in Counts II and III after I dismissed the Title IX claim, the only claim over which I had original subject matter jurisdiction.

When Jane filed her first amended complaint she was free to allege diversity of citizenship as a separate basis for federal jurisdiction. But she did not. Instead, she was careful to note that this court has federal question jurisdiction under 28 U.S.C. § 1331 based on the Title IX claims that supported removal of the original complaint by Notre Dame. [DE 29 at ¶6.] Even after these jurisdictional issues were highlighted in the order granting Jane leave to file the first amended complaint [DE 24 at 9-10], Jane has not alleged that diversity of citizenship supports federal jurisdiction under 28 U.S.C. § 1332. The first amended complaint again alleges that Jane "resides in the State of Colorado." But "a person's residence may differ from his or her citizenship," and it is citizenship, not residency, that matters for purposes of diversity jurisdiction. *Slottke v. Wisconsin Dep't of Workforce Development*, 734 Fed.Appx. 354, 355 (7th Cir. 2018). A plaintiff's "reluctance to supply the court with essential details supports an inference that jurisdiction is absent," and "it is not the court's obligation to lead counsel through a jurisdictional paint-by-numbers scheme." *Guaranty Nat. Title Co., Inc. v. J.E.G. Associates*, 101 F.3d 57, 59 (7th Cir. 1996). Instead, when a plaintiff alleges residence but not

citizenship, the district court must dismiss an action based on diversity. *Adams v. Catrambone*, 359 F.3d 858, 861 n. 3. (7th Cir. 2004).

In the new pleading, the two state law claims remain as supplemental claims. *See* 28 U.S.C. § 1367. The claims for breach of contract and negligence will therefore be remanded to state court pursuant to the supplemental jurisdiction statute, 28 U.S.C. §1367(c)(1) and (3), in view of the disposition of the only federal cause of action and the uncertainty under Indiana law of issues presented in the case concerning assumption of a duty and the viability of negligence claims parallel to a breach of contract or Title IX claim. The Seventh Circuit has suggested that declining supplemental jurisdiction is the best course in just such a case as this. In *Doe-2 v. McLean County Unit District No. 5 Bd. of Directors*, 593 F.3d 507, 513 (7th Cir. 2010).

Nonetheless there may be a basis for diversity jurisdiction if Jane is a citizen of Colorado, and not merely a resident. This means that Notre Dame might remove the case from state court again, this time on the basis of diversity jurisdiction. To do so would be in violation of the forum defendant rule found in 28 U.S.C. §1441(b)(2). But because §1441(b)(2) is not a jurisdictional rule, it can be waived. So if this case is removed again by Notre Dame, this time on the basis of diversity of citizenship, it will be up to Jane Doe to object to the removal if her preferred venue continues to be state court.

**Conclusion**

Defendant University of Notre Dame's Request for Oral Argument [DE 32] is DENIED.

Defendant University of Notre Dame's Motion to Dismiss Plaintiff's First Amended Complaint [DE 30] is GRANTED as to Count I and DENIED WITHOUT PREJUDICE as to Counts II and III.

This action is REMANDED to the St. Joseph County Circuit Court pursuant to 28 U.S.C. §1367(c)(1) and (3) because the remaining claims of breach of contract and negligence raise novel issues of state law in this context, and because the only claim over which the court had original jurisdiction has been dismissed.

**SO ORDERED.**

**ENTERED this 27th day of November, 2018.**

                                         **/s/ Philip P. Simon**
                                         **United States District Judge**